OPINION OF THE COURT
Meyer, J.
Vested rights in a noncontributory pension plan are marital property to the extent that they were acquired *486 between the date of the marriage and the commencement of a matrimonial action, even though the rights are unmatured at the time the action is begun. The matrimonial court in the exercise of the discretion vested in it by part B of section 236 of the Domestic Relations Law may order distribution to one spouse of an equitable portion of that part of the present value of the other spouse’s pension rights earned during marriage, or may provide that upon maturity of the pension rights the recipient pay a portion of each payment received to his or her former spouse or may, if it determines that valuation or other problems make equitable distribution impractical or burdensome, order a distributive award in lieu of equitable distribution. The order of the Appellate Division should, therefore, be affirmed, with costs to defendant.
I
Plaintiff and defendant were married on December 1, 1973. Plaintiff is a policeman with the Rochester Police Department and also works part time as a radio announcer. He became a participant in the department’s pension plan on February 20, 1973, but had worked for the department since 1969. Because he had more than 10 years’ service with the department when his divorce action was begun on August 4, 1980, plaintiff’s rights under the pension plan were vested but he was not then entitled to benefits under the plan. On November 23, 1981, plaintiff having withdrawn his complaint, defendant was granted a divorce against him on her counterclaim.
The trial evidence established that the parties owned no property of substance other than plaintiff’s pension rights under the provisions of section 384-d of the Retirement and Social Security Law. It included no details concerning what rights plaintiff would have upon retirement or when his right to retire matured, but defendant presented, without objection, two letters from an actuarial firm, stating the present value of plaintiff’s interest in the plan, prorated for the period of the marriage, to be $28,204.81.[1] The *487 Trial Judge awarded defendant custody of the two children of the marriage, maintenance of $43 per week, to be reduced if defendant obtained employment by $1 per week for every $3 of her gross earnings and child support of $60 per child, to be increased in proportion to any increase in gross salary from plaintiff’s police department job. With respect to plaintiff’s pension rights, the Trial Judge found that in view of the length of his service and of his membership in the retirement system, he had a vested but unmatured right to a pension which would permit him to retire at half pay on February 20, 1993, at the earliest. He held those rights to be marital property subject to equitable distribution, and of a present value as to the portion the wife was entitled to share in of $14,102.40, and directed that defendant be paid, at plaintiff’s option, as follows: (1) $14,102.40 outright to be paid within 30 days; (2) at any time before retirement, $14,102.40 plus interest at the legal rate from the date of judgment; or (3) in default of either of the above, that proportion of one half of each pension check which the number of months the parties were married bears to the total number of months plaintiff was employed as a policeman prior to his retirement. The judgment directed service upon the pension plan administrator of a copy of the judgment and enjoined the administrator to withhold and forward to defendant’s attorneys the amount of defendant’s benefits under the third option from each payment becoming due to plaintiff unless defendant notified the administrator that she had been paid the money to which she was entitled under option 1 or 2.
On the husband’s appeal to the Appellate Division, that court, two Justices dissenting, agreed that vested but unmatured pension rights constitute marital property, but, concluding that the record was insufficient for it to determine the propriety of the lump-sum award decreed by the Trial Judge and that there was little purpose to be served in ordering retrial of that question in view of plaintiff’s lack of means with which to pay such an award, deleted the alternate provisions for lump-sum payment, it also modified the judgment to provide that payments out of plaintiff’s retirement benefits when received be made to defendant by plaintiff, be measured against the payment re *488 ceived by plaintiff less taxes, and that defendant’s entitlement be measured by the period between the date of the marriage and the commencement of the action, and deleted from the judgment the provisions for future increase of child support and decrease of maintenance.
On plaintiff’s appeal to us he argues that pension rights are not marital property and that an award to defendant of any part of those rights violates the constitutional prohibition against diminishment or impairment of the benefits derived from the pension system of a civil division of the State (NY Const, art V, § 7). He contends also that the Appellate Division erred in deleting the provision for future reduction of maintenance. Defendant wife cross-appeals so much of the Appellate Division order as modified the method of computation and the procedure for payment of her portion of plaintiff’s pension benefits and the deletion of the provision for future increases in child support.
II
Marital property is defined by statute as “all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action” (Domestic Relations Law, § 236, part B, subd 1, par c). Expressly excluded from the definition is separate property which, as defined in paragraph d, includes only property acquired before marriage or through gift or inheritance, compensation for personal injury, property exchanged for or acquired through increase in value of separate property, or property designated as separate by written agreement of the spouses. The only express reference to pension rights, however, is contained in subdivision 5 (par d, cl 4 [Factor 4]), which specifies that one of the factors to be considered by the court in determining an equitable distribution of marital property is “the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution.” Plaintiff husband argues that the explicit reference to loss of pension rights upon dissolution of the marriage requires the conclusion that they cannot be marital property, that pension rights are not acquired until they mature, which will be after commencement of the action, that they are only a contingent right to future *489 income, that if they constitute property they originated prior to the marriage and, therefore, constitute separate property and its increase, and that to order him to pay to defendant by way of distribution part of his future pension income, which when received may constitute the basis for maintenance payments to defendant, constitutes impermissible “double-dipping.”
Those arguments misperceive the legislative intent behind the enactment of part B and the nature of rights under a pension plan. As the Governor noted on approving the statute (L 1980, ch 281) which enacted part B of section 236 of the Domestic Relations Law, it was enacted after consideration over a six-year period and in response to his urging of the adoption of legislation which would consider the economic impact on spouses and children of the dissolution of a marriage, and it recognized “that the marriage relationship is also an economic partnership” (McKinney’s Session Laws of NY, 1980, p 1863). Moreover, that the Legislature intended the contribution of both spouses to the partnership to be recognized with respect to property acquired through the efforts of either becomes evident when the statutory scheme is considered as a whole. The court is empowered “in order to achieve equity between the parties,” not only to make an equitable disposition of marital property between them, but also to make a distributive award “in lieu of or to supplement, facilitate or effectuate the division or distribution of property where authorized in a matrimonial action, and payable in a lump sum or over a period of time” (Domestic Relations Law, § 236, part B, subd 1, par b; subd 5, par e). Importantly, not only is marital property defined broadly as all property acquired during the marriage prior to commencement of the action, but also the exception for separate property is narrowly written and expressly excludes from the increase in separate property which will be deemed separate property “such appreciation [as] is due in part to the contributions or efforts of the other spouse” (Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]). Significantly also, the court is enjoined in determining an equitable disposition of marital property to consider the “direct or indirect contribution made to the acquisition of such marital prop *490 erty by the party not having title, including * * * contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party” (§ 236, part B, subd 5, par d, cl [6]).
If, against that statutory background, we consider, as the Legislature may be deemed to have by reason of its specific reference to “pension rights,” the rights commonly accorded an employee and his or her[2] spouse in a pension plan, it becomes evident that an employee’s interest in such a plan, except to the extent that it is earned before marriage or after commencement of a matrimonial action, is marital property. The employee’s rights[3] in such a plan are incremental; for each month or year of service he receives credit which will enter into the computation of what the plan will pay out to him or to his family. Until he has been employed for a stated period of years his interest in the plan is defeasible; if he is fired, or leaves voluntarily, and under some, but not all, plans if he dies before expiration of that period, neither he nor his family will receive anything from the plan, unless the plan is contributory, in which event he will usually be entitled to withdraw his contributions together with the interest they have earned. Once that period is past, his rights are said to be vested, which means that if he is fired, or leaves, he can, when he reaches retirement age, draw a pension even though no longer employed, and if he dies after vesting, a death benefit will be payable under most plans. Though his rights in the plan be vested, however, he may not draw a pension until he reaches a specified age, and if he continues employment after that age, he will continue to accrue time credit and thus increase the amount of the pension he can draw when he retires. Upon retirement his rights are said to be matured, and payments will be made under one of several options he may select. If he opts for a monthly stipend for himself alone, it will be determined by multiplying his average monthly wage over a given period (usually the highest consecutive 36 months) by a fraction *491 the numerator of which is the number of months employed and the denominator of which is determined under the plan by the age at which he retires, and will be paid to him for life, any amount remaining in his pension reserve account when he dies being paid to his beneficiary. Another available option permits him to select a lesser monthly stipend for his life to be followed by a monthly stipend to his beneficiary for life, the amount of each being calculated actuarially on the basis of the life expectancies of each.[4]
From the foregoing recital it is apparent that the nonemployee spouse may have rights under a pension plan which are independent of those of the employee: to receive the death benefit before vesting, if there is one, or before maturity; to receive the balance of the reserve if the employee retires but dies before the reserve is paid out, or to receive a monthly stipend after the death of the employee if the employee elects to take that option.
Whether the plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years employed, but where, as here, the rights are vested,[5] or where they are matured, they have an actuarially calculable value. To the extent that they result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher *492 compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.[6]
The husband’s arguments do not require a contrary conclusion. Factor 4’s reference to “loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution” must be read as speaking to the loss of the nonemployee’s independent rights outlined above, which are essentially equivalent to inheritance rights, not to loss of the employee spouse’s pension rights acquired during marriage, for otherwise even matured pension rights, though clearly marital property, would be excluded. Moreover, pension rights acquired incrementally during marriage cannot be characterized as the increase of separate property originating before marriage in light of the exclusion of “appreciation * * * due in part to the contributions or efforts of the other spouse” (Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]) from the definition of separate property increase and thus its inclusion in the concept of marital property. Nor does the fact that the highest consecutive 36 months’ earnings upon which the employee spouse’s monthly stipend depends may occur after divorce affect the conclusion, for as the Delaware Supreme Court held in Jerry L. C. v Lucille H. C. (448 A2d, at p 226), “Mince each employment year is counted for pension purposes each contributes to the high salary years.” Finally, the suggestion that by making the distribution under consideration the husband will be unjustly burdened by “double-dipping” ignores the provisions of the statute which require that in determining distribution the court must consider “any award of maintenance under subdivision six” (Domestic Relations Law, § 236, part B, subd 5, par d, cl [5]) and that in determining the amount of *493 maintenance the court must consider “marital property distributed pursuant to subdivision 5” (§ 236, part B, subd 6, par a, cl [1]).
There remains for consideration the husband’s contention that to distribute his pension is to diminish or impair it contrary to the State Constitution (art V, § 7). The short answer is that the pension of the employee spouse is not diminished in the sense that the pension fund will pay any lesser amount. The husband’s reliance upon Caravaggio v Retirement Bd. (36 NY2d 348) is misplaced, for that decision depended not upon the Constitution but upon an antiassignment statute, and held that the pensioner could not contract away, by a provision in a separation agreement purporting to make his then wife the irrevocable beneficiary of all benefits payable upon his death after retirement, his right under the plan to designate his second wife as such beneficiary. Although section 410 of the Retirement and Social Security Law contains similar protection of police pensions against assignment or legal process, such provisions have been consistently construed not to have the effect of depriving the nonemployee spouse of the rights accorded him or her upon dissolution of the marriage by a decree of divorce (Monck v Monck, 184 App Div 656; Zwingmann v Zwingmann, 150 App Div 358; Matter of Spadaro v New York City Police Dept. Pension Serv., 115 Misc 2d 494; see American Tel. & Tel. Co. v Merry, 592 F2d 118).
Ill
 The modifications of the judgment ordered by the Appellate Division are either correct as a matter of law or matters committed to the discretion of that court and, therefore, beyond our power of review.
Whether marital property shall be distributed or a distributive award shall be made in lieu of, or to supplement, facilitate or effectuate a distribution of marital property are matters committed by section 236 (part B, subd 5) of the Domestic Relations Law to the discretion of the Trial Judge in the first instance. The authority of the Appellate Division is, however, as we have often noted (e.g., Northern Westchester Professional Park Assoc. v *494 Town of Bedford, 60 NY2d 492), as broad as that of the Trial Judge, and absent an exercise of discretion on its part so egregious that it can be characterized as an abuse as a matter of law, its exercise of discretion is not reviewable by us (Patron v Patron, 40 NY2d 582). Its change in the procedure of payment of defendant’s portion of future pension payments received by plaintiff is, therefore, beyond our review. As concerns the method of computation, the Trial Judge had directed the use, as the numerator of the fraction, of the number of months the parties were married. By limiting the numerator to the number of months prior to commencement of the action during which the parties were married, the Appellate Division simply conformed the judgment to the statutory definition of marital property as property acquired before commencement of the matrimonial action (Domestic Relations Law, § 236, part B, subd 1, par c).
Nor was there error in the deletion of the provisions for future changes in maintenance and support. The husband, having argued before the Appellate Division that both modifications should be deleted, will not now be heard to say that, because the wife did not cross-appeal to the Appellate Division, deletion of the provision for future decrease of his maintenance payments was improper. Moreover, deletion of both the increase and the decrease provisions was correct. The maintenance and support provisions of a matrimonial decree are discretionary determinations based upon not one but a number of interrelated facts found by the Trial Judge to exist (Domestic Relations Law, § 236, part B, subds 6, 7). To direct a future change on the occurrence of any given fact (for example, as here, the wife’s obtaining employment) ignores the possibility of change in other factors affecting the computation (e.g., increased expenses for child care during the wife’s hours away from home after she obtains employment). Except when a judgment provides for an imminent and measurable change (as when it directs sale of the marital residence and increases maintenance by the amount of rent that will be required after sale), or where statutory provision expressly provides otherwise (e.g., Domestic Relations Law, § 32, subd 3), such a judgment should not include *495 provision for increase or decrease upon the happening of a particular future event (Lesman v Lesman, 88 AD2d 153, 161, app dsmd 57 NY2d 956; Golden v Golden, 37 AD2d 578; see 22 NYCRR 699.9 [f] [5]).
Accordingly, the order of the Appellate Division should be affirmed, with costs to defendant.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
Order affirmed, etc.

. The letter erroneously used as the number of months for apportionment 90, rather than the correct figure, which is 80. In view of the Appellate Division’s deletion, in the exercise of discretion, of any lump-sum award, the error has no bearing on the conclusion reached in this opinion.

. As a matter of convenience only the pronoun “he” is used in the description of rights that follows.

. (See, generally, as to such rights, Mamorsky, Employee Benefits Law, §§ 1.02, 1.03, 1.04; Buck, Features of Present-Day Pension Plans, BNA Pensions & Profit Sharing [3d ed], 20-37; 1 Prentice-Hall, Pension and Profit Sharing, par 5500 if.)

. Although the record contains no complete specification of plaintiff’s rights, the Trial Judge’s findings and the provisions of article 8 of the Retirement and Social Security Law establish the following: He can retire after 20 years of service with an allowance of one half his final average salary, or after attaining age 62 with an allowance of Moth of his final average salary for each year of service (Retirement and Social Security Law, § 384-d, subd e); final average salary means the highest average annual compensation earned during any three consecutive years (Retirement and Social Security Law, § 302, subd 9); the plan includes an ordinary death benefit payable when an employee dies before retirement to the person he nominates to receive it (Retirement and Social Security Law, § 360, subds a, c), and an accidental death benefit payable to his widow or, if none, other designated relative (Retirement and Social Security Law, § 361); the plan includes a vested retirement allowance after 10 years of service payable upon discontinuance of service but not earlier than age 55 (Retirement and Social Security Law, § 376); and the retirement allowance is payable to him and his designated beneficiary in accordance with one of five options spelled out in the statute (Retirement and Social Security Law, § 390).

. In view of that fact, we do not reach or consider the status of nonvested pension rights.

. The conclusion thus reached accords with that of most out-of-State courts (e.g., Matter of Brown, 15 Cal 3d 838; Jerry L. C. v Lucille H. C., 448 A2d 223 [Del]; Matter of Hunt, 78 Ill App 3d 653; Hatcher v Hatcher, 129 Mich App 753, 343 NW2d 498; Copeland v Copeland, 91 NM 409; Kikkert v Kikkert, 177 NJ Super 471, affd 88 NJ 4; see Foster, A Practical Guide to the New York Equitable Distribution Divorce Law, pp 159-188, 191-200; Ann., 94 ALR3d 176) and with the result though not entirely with the reasoning of those Appellate Divisions (D’Amato v D’Amato, 96 AD2d 849; Damiano v Damiano, 94 AD2d 132; Szulgit v Szulgit, 92 AD2d 712, on rearg 94 AD2d 979; see Reed v Reed, 93 AD2d 105, app dsmd sub nom, Patricia R, v Thomas R., 59 NY2d 761) and trial courts (Hebron v Hebron, 116 Misc 2d 803; Perri v Perri, 115 Misc 2d 478; McDermott v McDermott, 123 Misc 2d 355; see Lentz v Lentz, 117 Misc 2d 78) that have considered the question.