Requestor: Hon. Dr. D. Bruce Johnstone, Chancellor State University of New York State University Plaza Albany, New York 12246
 Hon. Dr. W. Ann Reynolds, Chancellor City University of New York 535 E.A. Street New York, New York 10021
Written by: Robert Abrams, Attorney General
Your counsels have asked whether the trustees of the State University of New York and the City University of New York may authorize lump-sum distributions of certain accrued pension benefits to University employees at separation or upon retirement, and authorize the transfer of pension fund accumulations to alternate investment vehicles under the terms of each University's Optional Retirement Program.
Prior to the enactment of the Optional Retirement Programs (ORP), employees of the State and City Universities were members of either the New York State Teachers' Retirement System or the New York State Employees' Retirement System. Legislative Bill Jacket, L 1964, ch 337; L 1965, ch 1028. The retirement options provided by these plans were more restricted than those typically provided by higher education institutions throughout the country. Ibid. Both the Teachers' and Employees' Retirement Systems are defined benefit plans. In a defined benefit plan, contributions are made throughout the members' service and they receive fixed pension amounts determined by the terms of the plan.
You have informed us that at the time of the enactment of the ORP, most institutions of higher education offered retirement benefits in the form of defined contribution plans. In defined contribution plans, the employee's pension is determined solely by the return on contributions made on his or her behalf. Accordingly, these retirement plans are highly "portable" in the sense that an employee can move from employer to employer and retain control over the retirement benefits he or she has already accumulated.
As a result of offering a pension plan incompatible with those offered by most institutions of higher learning, SUNY was at a disadvantage when it came to the recruitment of qualified personnel. Ibid. In the early 1960s, the problem was particularly acute because it was estimated that SUNY had "to add from 10,000 to 15,000 qualified faculty members within the next decade in order to keep pace with the mounting educational needs of this state". L 1964, ch 337, § 1.
To address this problem, and to allow SUNY to compete more effectively in the academic market, the Legislature enacted the Optional Retirement Program for SUNY employees. Education Law §§ 390, et seq.; L 1964, ch 337. The ORP allowed SUNY employees to opt out of the more restrictive retirement systems in favor of a plan comparable to those being offered elsewhere and thereby established "pension mobility". Legislative Bill Jacket, L 1964, ch 337. The statement of legislative purpose which accompanied the establishment of the ORP provided as follows:
 "To insure the recruitment and retention of qualified academic talent it is necessary, in the best interest of New York state, to make provision for the establishment of a program which will permit the state to compete effectively for its fair share of the academic talent available by providing a method of optional participation in a retirement plan of the kind desired by qualified academic personnel and available to them at the great majority of colleges and universities in the nation. Such a plan should enable the state to make contributions for the purpose of furnishing retirement and/or death benefits for optional participants therein by means of contracts which may be owned and retained by such participants". L 1964, ch 337, § 1.
The Optional Retirement Program was established as article 8-B of the Education Law[1]. Section 391 of the Education Law provides:
 "There is hereby established an optional retirement program which shall provide for the purchase of contracts providing retirement and death benefits for or on behalf of electing employees." Education Law § 391(1).
Article 8-B goes on to establish the rates of contribution to the pension by SUNY and the employee. Education Law § 392. The precise form and nature of the contracts, however, is not set forth in the statute, being left to the approval of the board of trustees:
 "The board shall designate the insurer or insurers to which payment of such contributions may be made and shall approve the form and contents of such contracts." Education Law § 391(2).
Once the decision to participate in the program is made, the contracts become the property of the employee; under no circumstances is the State or State University liable for payment of benefits. Education Law §§391(1), 396. Thus, the intent of ORP is to provide more retirement options and ownership and control by the employee over contributions to permit pension mobility. The employee owns the contracts and performance of the investment vehicle dictates the return to the employee.
Your counsels informed us that in 1964 and 1965, the State University and the City University separately designated the Teachers Insurance and Annuity Association and the College Retirement Equities Fund (TIAA-CREF) as the insurer for each University's Optional Retirement Program. TIAA is a legal reserve life insurance company which invests contributions in fixed income securities to purchase guaranteed annuities. CREF invests contributions generally in equities and provides variable annuities. TIAA-CREF participants allocate contributions between TIAA and CREF, in accordance with TIAA-CREF rules. As noted in the materials submitted with your request, many (over 4,000) of the colleges and universities throughout the nation offer TIAA-CREF sponsored annuities to their employees.
Each Optional Retirement Program remained virtually unchanged until 1988 and 1989 when additional alternate investment options within CREF (money market, bond market and social choice accounts) were made available. Both Universities approved these additions within TIAA-CREF for each Program. Thus, ORP provides numerous investment options within TIAA-CREF. Members can allocate and transfer contributions between these investment options.
Currently, the TIAA-CREF contract approved by the trustees permits up to ten percent (10%) of an employee's entire TIAA-CREF accumulations to be distributed in a lump sum at retirement. In 1990, with the approval of the Securities and Exchange Commission, TIAA-CREF also began to offer (1) a lump-sum distribution option for participants in CREF accounts which would permit a participant's total CREF accumulations to be withdrawn upon separation from employment as an additional choice to several annuity options, and (2) a transferability option which would permit a participant to transfer contributions and accumulations during employment to alternate investment vehicles outside of TIAA-CREF. The offering of both new options, or variations of these options, requires the authorization of a participant's employer. Your question is whether the trustees may authorize contracts which offer these newly-approved options pursuant to the legislation establishing the Optional Retirement Program.
A. Lump-sum Payout of CREF Accumulations to Employee on Retirement.
The legislation establishing the ORP gives the board of trustees authority to approve the form and content of the retirement contracts which are available to the employees under the program. Education Law § 391(2). The statute does not prohibit or require any particular format for the contract, leaving the decision to the trustees.[1]
Lump-sum payouts are not expressly provided for or excluded from the contracts.[2]
Thus, the Legislature has given the trustees flexibility in selecting an insurer or insurers and in defining the terms and conditions of contracts. The authorization of lump-sum payments is consistent with this broad delegation of authority.
The statute does require, however, that the contract be purchased from an "insurer", defined in the statute as being "a life insurance corporation, or other corporation subject to insurance department supervision". Education Law § 390(7). Lump-sum distributions have long been authorized as legal in New York State. Insurance Law § 4223(a)(1)(B). Inasmuch as these options are recognized under New York State law, and are offered by the insurer designated by the board as the contract provider, we believe that the board can permit them to be offered to SUNY employees.
Indeed, to find otherwise would be inconsistent with the legislative intent of the ORP: to make SUNY competitive with other universities by offering comparable, portable retirement benefits. Given that the majority of other institutions are offering the lump-sum option,[1]
SUNY would be disadvantaged were the board deprived of authority to approve a similar option for SUNY employees.
Further, we believe that the lump-sum distribution option is consistent with statutory provisions giving the employee ownership of the contract and control over contributions. No return is guaranteed by the City or the State. The employee bears the risk of his or her investment choices. The right to receive a lump-sum distribution is consistent with these characteristics of the ORP set forth by the Legislature.
Finally, we note that allowing a lump-sum distribution appears practical under a defined contribution plan and, therefore, is not inconsistent with the ORP authorized by the Legislature. Unlike other State retirement plans, the ORP is a defined contribution plan as opposed to a defined benefit plan. Under a defined benefit plan, the performance of the plan's investments does not affect a participant's benefit, as these benefits are defined by the terms of the plan. Therefore, the State may need to rely on the earnings of the money remaining in the plan to subsidize the cost of the plan. For this reason, a lump-sum distribution option in a defined benefit plan might constitute a fiscal risk. On the other hand, under the ORP, a participant is not insulated from the investment experience of the plan. An ORP participant will receive a pension that is based upon the accumulations credited to the retiree and the growth of the accumulations. SUNY and CUNY are statutorily protected from the investment experiences of the plan. Education Law §§ 394 and 6255.
B. Transferability of CREF Accumulations.
At the same time TIAA-CREF began offering lump-sum distributions, it also introduced a new "transferability" option. Currently, TIAA-CREF is the only insurer designated by the board to offer retirement and death benefit contracts to employees under ORP. Contributions paid by SUNY and the employee are invested by TIAA-CREF, and paid out by TIAA-CREF. The transferability option would allow an employee to transfer his or her funds to alternate funding vehicles outside of the custody and control of TIAA-CREF.
The Education Law makes it clear that any retirement contracts must be approved by the board as to form and content. Education Law §391(2). Furthermore, the board is charged with the duty of ascertaining the solvency and the ability to provide benefits of the insurer offering such contracts. Ibid. We find it significant that section 392 provides that "[t]he board shall designate the insurer orinsurers" who will provide services. The reference to "insurers" indicates that the Legislature sought to give the board authority to approve more than one insurer to offer retirement contracts to employees under the ORP. If more than one insurer is involved, we see no reason why transfers among such designated, authorized, fiscally-responsible insurers cannot be permitted by the board. Indeed, members currently can select from and transfer funds between numerous investment options within TIAA-CREF.
As in the case of the lump-sum distribution option, the transferability option is within the broad delegation of authority to the board to determine "the nature and extent of the rights and benefits to be provided by such contracts". Education Law § 391(2). Furthermore, the transferability option is consistent with the purpose of the ORP, to offer a variety of investment options, and keep the ORP competitive with retirement programs offered at competing institutions.
We note that on joining the ORP, an employee who had previously been a member of the State Employees' or Teachers' Retirement System was given the option of transferring the accumulations earned while a member of the other retirement systems to the ORP. Education Law § 393(3). This "transfer option" is a part of the mechanism allowing employees to join the ORP. It is inherently different from the transfer option proposed in your letter, which allows an employee to transfer his or her funds between various investment options within ORP.
C. Spousal Approval of Lump-Sum Distribution.
You have also asked for our opinion as to whether the board may require the concurrence of an employee's spouse as a prior condition to a lump-sum distribution of accumulations.
In our view, the legislation authorizing the Optional Retirement Program gives the trustees discretion to require spousal approval as a condition of lump-sum distribution.
First, as we have previously noted the trustees are required to designate the insurer or insurers and must approve the form and content of the contracts. Education Law § 391(2). In designating insurers and in approving the form of the contracts, the trustees are required to consider the nature and extent of the rights and benefits to be provided by the contracts for electing employees and their beneficiaries. Ibid. Clearly, under these provisions the trustees have discretion to approve or disapprove a lump-sum distribution retirement option. Further, we believe these provisions permit the trustees, should they decide in favor of a lump-sum distribution option, to determine the terms of this option. We believe that consistent with the statute the trustees may require spousal approval as a condition of the lump-sum distribution retirement option. In so doing, the trustees would have given due consideration to "the nature and extent of the rights and benefits to be provided by such contracts". Ibid.
The boards' deliberations may be informed by the equitable distribution law (Domestic Relations Law § 236), under which a spouse acquires a protected interest in an employee's pension even in cases where the spouse is not a party to the contract or named as a beneficiary. Majauskas v Majauskas, 61 N.Y.2d 481 (1984); McDermott vMcDermott, 119 A.D.2d 379 (2d Dept 1986), app dsmd 69 N.Y.2d 1028
(1987). McDermott held that a court, in the course of making an equitable distribution pursuant to a divorce, has the authority to restrict a retiree's pension payment options in order to protect the rights of the spouse. McDermott, supra, 119 A.D.2d at 379-380.
While that holding does not require that the trustees condition a lump-sum distribution on spousal approval, the opinion recognizes that the wife began acquiring an interest in the pension from the moment her husband joined the plan.[1] McDermott, supra, 119 A.D.2d at 379. Thus, the requirement of spousal approval by the trustees also serves a salient public policy.
We conclude that under the Optional Retirement Program the trustees of the State University of New York and the City University of New York, in the course of exercising their fiduciary duty to approve insurers and contracts governing employees' retirement funds, may authorize lump-sum distribution of certain accrued benefits to university employees at separation or upon retirement, may authorize the transfer of pension fund accumulations to alternate insurers, and may make the lump-sum distribution option subject to spousal approval.
[1] The following year, an Optional Retirement Program for the City University of New York was established. L 1965, ch 1028; Education Law §§ 6250, et seq. The provisions of the statute creating an Optional Retirement Program for CUNY, as well as the Legislature's reasons for adopting it, are substantively identical to that for SUNY. Accordingly, the analysis and conclusions in this opinion apply equally to the SUNY and CUNY Optional Retirement Programs.
[1] The statute gives only the following general guidelines to assist the board in selecting an insurer and a contract:
"In making such designation and giving such approval the board shall give due consideration to (i) the nature and extent of the rights and benefits to be provided by such contracts for electing employees and their beneficiaries, (ii) the relation of such rights and benefits to the amount of contributions to be made under this article, (iii) the suitability of such rights and benefits to the needs and interests of electing employees and to the interests of state university and of electing employers in the employment and retention of eligible employees, and (iv) the authority and ability of the designated insurer or insurers to provide rights and benefits under such contracts." Education Law § 392(2).
[2] For employees who join the ORP, and who do not continue in service beyond a year, the statute requires the return of the employee's contributions to the ORP upon separation. Education Law § 392(4). (Employer contributions are deferred until the end of one year of service.) Although this provision authorizes a lump-sum payment of accumulations, it is for a purpose significantly different from the situation raised in your letter. The lump-sum payment for non-vesting employees serves to avoid encumbering funds of persons who had minimal involvement with the State. Furthermore, it is a payment of funds held in escrow by the State, not a payment of benefits under the ORP. The provisions authorizing the refund of these payments, therefore, is essentially unrelated to the issue of a lump-sum benefit upon retirement.
[1] The materials included with your request indicate that this is so.
[1] We note that the spouse's interest in the pension is considered marital property subject to equitable distribution only to the extent the pension rights were acquired during the marriage. McDermott, supra.