■ In the Matter of SOPHIE SMITH, Petitioner, v NEW YORK STATE AND LOCAL RETIREMENT SYSTEMS—POLICE AND FIRE RETIREMENT SYSTEMS et al., Respondents. [712 NYS2d 649] —Spain, J. Proceedings pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Comptroller which denied petitioner's request for the preretirement death benefits of her former spouse under a qualified domestic relations order.

In the action which culminated in their divorce, petitioner and Nicholas Smith agreed that the retirement benefits accrued by Smith as a result of his membership in respondent New York State and Local Retirement Systems during the marriage were marital property and that petitioner's interest therein would be governed by the formula approved in Majauskas v Majauskas (61 NY2d 481). A qualified domestic relations order (hereinafter QDRO) was drafted and submitted to the Retirement System for its approval. In January 1996, after the Retirement System found the QDRO to be acceptable, the Supreme Court Justice who presided over the divorce action signed the QDRO and it was entered in Suffolk County. In June 1997, after remarrying, Smith filed a form with the Retirement System designating his second wife, respondent Ina Smith (hereinafter respondent), as the primary beneficiary. Following Smith's death in September 1997, petitioner applied for her share of his preretirement death benefit. The Retirement System denied her application on the ground that the benefit was payable to the designated beneficiary.

Petitioner requested administrative review and, after a hear-

ing at which respondent appeared and participated, the Comptroller determined that the Retirement System was obligated to comply with the QDRO and must apportion Smith's death benefit between petitioner and respondent. Accordingly, the Comptroller determined that petitioner was entitled to 33.2% of Smith's death benefit, while respondent was entitled to 66.4% of the death benefit. Petitioner commenced this CPLR article 78 proceeding to review the determination and Supreme Court transferred the proceeding to this Court.

Once the Comptroller determined that the Retirement System was obligated to comply with the terms of the QDRO, the only remaining issue involved the interpretation of those terms. Ordinarily, the interpretation of the terms of a court order would be for the court to resolve, and the QDRO expressly provided that Supreme Court had continuing jurisdiction to implement and supervise the payment of retirement benefits upon the parties' application. However, the interested parties—petitioner and respondent—did not seek the court's assistance, but elected to submit the issue to the Comptroller as part of petitioner's application for Smith's death benefit.

Considering the Comptroller's authority to determine applications for retirement benefits (*see, e.g., Matter of Tooley v McCall*, 252 AD2d 794, 795), we are of the view that the Comptroller also had the authority to resolve the dispute over the interpretation of the terms of the QDRO submitted to him by the parties. The parties were not obligated to submit that issue to the Comptroller, but once they did so, he had the authority to decide the issue and his resolution thereof is subject to the scope of judicial review generally applicable to a determination of the Comptroller, which requires that the determination be upheld if rational and supported by substantial evidence (*see, id.*).

With regard to the interpretation of the terms of the QDRO, the only evidence introduced at the hearing was the QDRO itself. The remainder of the hearing consisted of counsels' arguments expressing their interpretations of the disputed terms. Accordingly, there is no real substantial evidence issue; the only issue is whether the Comptroller's interpretation of the QDRO is rational. We conclude that it is.

With regard to the retirement allowance payable upon Smith's retirement, the QDRO refers to "the formula devised in the case of *Majauskas v Majauskas*" (*supra*) and directs the Retirement System to pay petitioner that portion of Smith's monthly retirement allowance which equals 50% of the product obtained by multiplying the total amount of Smith's monthly

retirement allowance by the "coverture fraction". The QDRO provides that the "coverture fraction" represents that portion of Smith's retirement acquired during the marriage, with the numerator defined as Smith's credited service with the Retirement System during the marriage and the denominator defined as Smith's total credited service. The QDRO further provides that, in the event of Smith's death prior to retirement, petitioner "shall receive her pro rata share of any survivor benefit calculated pursuant to the Coverture Fraction formula hereinabove set forth".

Petitioner contends that in the absence of an express reference to 50% the death benefit provision clearly and unambiguously requires that petitioner's pro rata share be calculated by multiplying the death benefit by the coverture fraction. We disagree. While the coverture fraction itself is defined in the QDRO, there is no specific definition of "the coverture fraction formula". The retirement allowance provision, which precedes the death benefit provision, contains the only express reference to a formula and that formula incorporates the coverture fraction. Accordingly, it was rational for the Comptroller to conclude that petitioner's pro rata share of Smith's death benefit should be calculated using the formula set forth in the retirement allowance provision. There is, therefore, no basis to disturb the Comptroller's determination.

Cardona, P. J., Peters, Mugglin and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.