OPINION OF THE COURT
Brian F. DeJoseph, J.
By order to show cause dated May 21, 2001, plaintiff, former spouse of defendant, now deceased, seeks an order “supplementing the Domestic Relations Order of this Court dated March 22, 1990 and requiring an appropriate part of defendant’s Employee Savings Fund Plan, and an appropriate part of the proceeds of [named] defendant’s Pension Fund and Death Benefits * * * .” On June 6, 2001, this proceeding was removed to federal court. Thereafter the federal court remanded the case to this court by order of October 4, 2001, based upon lack of federal court subject matter jurisdiction.
The plaintiff, former spouse, claims that she is entitled to survivor benefits under her former husband’s pension plan in accordance with a domestic relations order issued pursuant to a judgment of divorce. The defendant’s widow, hereinafter referred to as surviving spouse, opposes such relief. Niagara Mohawk, the administrator of the plan, has denied any survivor benefit to the plaintiff, as she was not designated the surviving spouse in the domestic relations order issued by the court. On this motion, the plaintiff asks the court to find that it was the intent of the judge who issued the divorce decree and signed the subsequent domestic relations order to award her a survivor benefit in her former husband’s Niagara Mohawk pension plan, to the extent of providing her with a share of death benefits, as well as a portion of defendant’s savings plan.
Survivor Benefit
In the court’s written decision following trial, the plaintiff was granted a judgment of divorce. Pursuant to the divorce decree, the defendant’s pension plan was to be divided and distributed between the parties in accordance with the formula promulgated under Majauskas v Majauskas (61 NY2d 481). In accordance with its judgment of divorce, the court issued a domestic relations order directing that the plaintiff receive 50% of the defendant’s monthly allowance for as long as the defendant received, or was entitled to receive, benefits under the pension plan. However, the defendant died prior to his retire *461 ment and. thus never received any monies from the pension plan. Niagara Mohawk notified the plaintiff informing her that because the qualified domestic relations order (hereinafter referred to as QDRO) did not make a specific reference to death benefits flowing from the pension fund, the plaintiff, as the former spouse, was not entitled to receive a share of those benefits.
Any assignments of pension interests must not only comply with state domestic relations law but also with federal law, namely, Employee Retirement Income Security Act of 1974 (hereinafter referred to as ERISA), and the Internal Revenue Code of 1986. In general, ERISA and the Internal Revenue Code do not permit a participant to assign or alienate the participant’s interest in a pension plan to another person. However, under both ERISA and the Internal Revenue Code, pension interests may be assigned if the judgment, decree, or order creating or recognizing a spouse’s, former spouse’s, child’s, or other dependent’s interest in an individual’s pension benefits constitutes a QDRO. The assignee is referred to as an Alternate Payee. The plan administrator bears the responsibility to determine whether or not a domestic relations order qualifies as a QDRO. Niagara Mohawk made the determination that the domestic relations order issued by the court in regard to the pension plan was a QDRO.
Both ERISA and the Internal Revenue Code require of all pension plans an obligation to provide survivor benefits for the participant’s surviving spouse. (See, ERISA [29 USC] § 1055; Internal Revenue Code [26 USC] § 401 [a] [11]; § 417.) A former spouse may be entitled to receive a part of the participant’s survivorship benefit. (See, ERISA [29 USC] § 1056 [d] [3] [F]; Internal Revenue Code § 414 [p] [5] [A].) As stated above, generally, the only way to establish a former spouse’s right to survivor benefits is through a QDRO. Failure to include a survivorship provision in the QDRO often goes undetected until the participant dies or retires, that is, when the survivor benefits irrevocably vest in the current spouse and it is too late to do anything about it.[1] To avoid an unintended loss of benefits for the Alternate Payee, a QDRO may provide that the former spouse of a participant will be treated as a surviving spouse for purposes of the joint and survivor rules of Internal Revenue Code § 401 (a) (11); §§ 417 and 414 (p) (5) (A). If a QDRO gives all or part of the surviving spouse rights to a former spouse/ *462 Alternate Payee, the former spouse will be entitled to receive such benefit at the time of the participant’s death. Niagara Mohawk cannot allow the plaintiff, as the former spouse, to replace the current spouse for purposes of all or some of the special survivor benefits protection, unless the right to spousal status is expressly stated in the QDRO, which Niagara Mohawk found not to be the case.
On May 21, 2001, more than 11 years after the order was entered, and 10 years after Niagara Mohawk notified the plaintiff that no benefits were available to her, this proceeding was commenced by the plaintiff, seeking to supplement the 1990 order. It is the plaintiffs contention that the language of the court’s judgment of divorce directing that the defendant’s pension plan be divided pursuant to the Majauskas formula is broad enough to include a death benefit. The relevant language in the QDRO provides that the plan is to pay benefits to the Alternate Payee for as long as the participant is entitled to receive benefits under the plan. The plaintiffs assertion that survivor benefits can be implied from this provision is erroneous, and her position is actually contrary to the language of the QDRO. (See Hokanson v Office of Personnel Mgt., 122 F3d 1043 [1997].) The QDRO provision clearly limits the plaintiffs entitlement to a percentage of only those benefits which the husband would have been entitled to collect upon retirement. (Hokanson v Office of Personnel Mgt., supra.)
Retirement benefits and survivor benefits are not inclusive of each other. Both ERISA and the Internal Revenue Code treat them as two separate interests. Internal Revenue Code § 414 (p) (5), entitled “Treatment of former spouse as surviving spouse for purposes of determining survivor benefits,” provides that the former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of section 401 (a) (11) and section 417, to the extent provided for in a qualified domestic relations order. It is evident from this language that the Internal Revenue Code clearly requires that the former spouse/Alternate Payee be designated in the QDRO as a surviving spouse in order for her to be entitled to receive any survivorship benefit. No such requisite language can be found in the Kazel QDRO, or the trial court’s decision or judgment. The plaintiff is simply referred to as an “Alternate Payee.” The language “The Plan is directed to pay Sandra Kazel, as Alternate Payee fifty percent of the Participant’s monthly allowance” in conjunction with “The plan is directed to pay said benefits to the Alternate Payee for as long as the Participant *463 receives or is entitled to receive benefits under the Plan” limits the plaintiffs award to an interest in the participant’s retirement benefit, and nothing more. There are no provisions in the order which give the plaintiff the right to be treated as the participant’s surviving spouse for the purpose of survivor benefits, in the event of the participant’s death before his benefit commencement date. In fact, there is no mention of “survivor benefit” or “death benefit” anywhere in the order.
A party must expressly request survivor benefits, and they must subsequently be provided for in the QDRO pursuant to the divorce decree. In Irato v Irato (288 AD2d 952), the Court struck down a QDRO on the ground that it deviated from the judgment of divorce. The QDRO awarded the defendant a survivor annuity, while no provision for such an award was made in the judgment of divorce. The Appellate Division reasoned that the issue of equitable distribution was fully litigated at the time of the divorce, and held that a final judgment of divorce issued by a court having both subject matter and personal jurisdiction has the effect of determining the rights of the parties with respect to every material issue that was actually litigated, or might have been litigated. There is no proof in those portions of the trial record presented to this court by plaintiff that she ever requested the trial court to award her both an interest in the defendant’s retirement benefits, as well as survivor benefits, or even an inference that plaintiff sought information from Niagara Mohawk about such benefits, and/or presented any such evidence to the trial court. (See Keith v Keith, 241 AD2d 820.)
In Wojtowicz v Wojtowicz (171 AD2d 1073), the Court held that in the absence of any proof establishing the existence and availability of husband’s pension survivor benefits, it was an error to award wife a portion of such benefits. The Court went on to say, “The record contains no proof that survivor pension benefits are available under the defendant’s pension plan. Plaintiff, as the party seeking a portion of the defendant’s pension interest, had the burden of establishing the value of said interest, usually by actuarial evidence, as well as the evidence of the plan itself.” (Wojtowicz, supra at 1073-1074 [internal quotation marks omitted].) In light of Wojtowicz, not only must one specifically request survivor benefits, but one must also establish the existence and availability of such benefits. There is no indication that the plaintiff sought survivor benefits from the Court, as there was no reference made to them in the judgment of divorce, nor has there been a showing that any proof *464 was offered during the trial concerning the availability or existence of such benefits.
In Moran v Moran (289 AD2d 544), the former wife moved for a QDRO providing her with survivorship interest in the former husband’s pension. The trial court issued a revised QDRO requiring the former husband to provide the former wife with survivorship interest in his pension and the husband appealed. The Appellate Division held that the former wife was not entitled to a QDRO requiring the former husband to provide her with survivorship interest in his pension. The stipulation of settlement and the judgment of divorce only stated that the parties would share equally in the plaintiff’s pension pursuant to the Majauskas formula. The documents were silent on survivorship interest. In the instant proceeding, both the judgment of divorce, as well as the QDRO are silent on the issue of survivor benefits. While Moran (supra) dealt with a stipulation of the parties, the rationale of its decision is applicable to a trial situation in which no proof of such contentions had been presented to the trial court.
The plaintiff requests that the court draw an inference of survivor benefits which are simply not available to her under the QDRO. It is evident from the language of the QDRO that the intent of the provision was to provide the plaintiff only with a share of benefits actually received by the defendant during his lifetime. Even if the domestic relations order provided that the plaintiff would be entitled to all benefits available to her under the applicable sections of the Internal Revenue Code, the court would be unable to construe this statement as automatically meaning that the intent was to give the plaintiff preretirement survivorship benefits (see, De Gaust v De Gaust, 237 AD2d 862; see also Hokanson v Office of Personnel Mgt., supra).
When faced with similar factual patterns, courts in other jurisdictions have reached the same conclusion and result. In Dugan v Clinton (1987 WL 11640, 1987 US Dist LEXIS 4276), a case from the Northern District of Illinois, the plaintiff, following the death of her former husband, sought preretirement death benefits from the former husband’s pension plan. Pursuant to the divorce judgment, the former wife was to receive 25% of the monthly pension plan benefits due to her former husband. The former husband died before he reached the retirement age of 55, and thus never received any monthly pension benefits. The Dugan court held that under ERISA (29 USC § 1055 [a] [2]), the plan only owed an automatic preretire *465 ment survivor annuity to the participant’s surviving spouse. The court reasoned that the plaintiff’s right was only in benefits “due” to or “received” by the participant, former husband, and the survivor annuity could not be considered such a benefit because the participant never was, and never could be entitled to it. The 1982 divorce judgment gave the plaintiff 25% of what turned out to be zero, the amount of monthly pension benefits due to the participant. The court held that the automatic survivor annuity must go to the participant’s surviving spouse, and not former spouse.
In Dorn v International Bhd. of Elec. Workers (211 F3d 938), the Fifth Circuit held that the District Court correctly determined that as an Alternate Payee by virtue of her QDRO, the former spouse did not obtain status as a surviving spouse, “Qualified Spouse,” or any interest in the survivor annuity under the provisions of the former husband’s pension plan. The court determined that the QDRO was silent on the issue of survivor’s rights, and the only benefit of participant’s plan which was addressed in the QDRO was the one that specified the plaintiff’s interest in the participant’s retirement annuity. The court found that the monthly payment specified in the QDRO had no relationship whatsoever to the surviving spouse annuity facet of the former husband’s pension plan. The court held that the domestic relations order nowhere designated the former wife as the surviving or qualified spouse for purposes of any survivor benefit, under Internal Revenue Code § 414 (p) (5).
Survivor benefits are distinct from retirement benefits. (Hokanson v Office of Personnel Mgt., supra at 1046; see also Samaroo v Samaroo, 193 F3d 185, 188.) They cannot be inferred in the case of the former spouse, as the plaintiff here requests of the court. Both ERISA and the Internal Revenue Code bestow survivor annuity upon the surviving spouse. A former spouse can overcome that restriction only in the event that he/she requests, and is awarded such benefits by the trial court. Such an award must subsequently be reflected in the QDRO, evidenced by clear language designating the former spouse as the surviving spouse for the purposes of survivor annuity. In the instant proceeding, no such language was contained in either the court’s decision, its judgment, or the QDRO signed by the trial judge. Acknowledging that the trial court had the authority to make a finding, judgment and order now sought by the plaintiff, there has been no showing by the plaintiff herein of the existence of trial proof establishing the *466 existence of such benefits or that plaintiff made any request for said benefits to the trial court at that time, despite having been given ample opportunity to provide same on this application. This court should not be required, nor is it permitted, to extrapolate some implied meaning, or create evidence to support a finding to provide relief to plaintiff herein. Accordingly, the plaintiffs application for survivor benefits is denied.
Savings Plan
The domestic relations order issued by the court also provided that the participant shall assign to the Alternate Payee a portion of benefits from the participant’s account in the Employee Savings Fund Plan. With respect to the plaintiff s application for an order compelling Niagara Mohawk to pay over to her a portion of monetary benefits in the defendant’s savings plan, the proof is clear, and the QDRO so states, that the court awarded the plaintiff 50% of the balance in said account as of March 27, 1989. Niagara Mohawk, plan administrator of defendant’s plans, rejected the original order, finding same not to be qualified because the balance amount in said savings plan as of March 27, 1989 was blank in said order. As demonstrated in plaintiffs papers submitted herein, plaintiff had made repeated attempts, in writing, to the plan administrator to obtain such account balance, but had been unsuccessful in obtaining the information. Such information was, and presumably is, readily and uniquely available to the administrator. It is noteworthy that counsel for the surviving spouse, in his affidavit submitted in this proceeding, asserts, on information and belief, that such balance as of March 27, 1989 was $15,027.47. It is axiomatic that the administrator should not have denied the benefits to the plaintiff simply because she was unable to ascertain the exact amount to be inserted in the court’s order. Since ERISA (29 USC) § 1056 (d) (3) (H) (i) and Internal Revenue Code § 414 (p) (7) (A) require such accounts to he segregated upon notice to them, the total balance in the account as of March 27, 1989 is to be ascertained by the administrator, and thereafter 50% of said amount, together with market experience thereon from March 27, 1989, is to be distributed to the plaintiff.
The court is aware that the surviving spouse has also raised the defenses of waiver, estoppel, and laches to plaintiffs claims for said amounts. Although the plan administrator did not approve the domestic relations order when it was initially submitted to it, such denial of qualification does not change the trial *467 court’s determination and judgment that plaintiffs distributive award included 50% of the savings plan, nor extinguish her entitlement to such distributive share. Therefore, the surviving spouse cannot establish any prejudice to her by reason of the plaintiffs delay in seeking such share, and therefore, the defenses are unavailable to her.

. Daniel N. Janich, When Remarriage Muddies the Waters: QDROs & Surviving Spouse Protection, 24 Fam Advoc 39, 40 (Fall 2001).