◼ SIVACHART SIRIVANTA, Appellant, v SUCHADA SIRIVANTA, Respondent. [883 NYS2d 594]—

In a matrimonial action in which the parties were divorced by judgment dated May 11, 2005, the plaintiff former husband appeals, as limited by his brief, from so much of an order of the Supreme Court, Orange County (McGuirk, J.), dated February 6, 2009, as denied that branch of his motion, which was, in effect, to amend a qualified domestic relations order of the same court, dated December 18, 2008, to provide that the former wife is entitled to 41% of the number of shares in the subject brokerage account as of February 15, 2008.

Ordered that the order dated February 6, 2009, is reversed insofar as appealed from, on the law, and that branch of the former husband's motion, which was, in effect, to amend the qualified domestic relations order dated December 18, 2008, to provide that the former wife is entitled to 41% of the number of shares in the subject brokerage account as of February 15, 2008, is granted; and it is further,

Ordered that the plaintiff shall serve and file an amended qualified domestic relations order, in accordance herewith, within 30 days after service upon him of a copy of this decision and order; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

As relevant here, the parties' judgment of divorce provided that the "number of shares" that existed as of May 31, 2001, in

the former husband's 401(k) account maintained with General Electric, would be divided pursuant to the formula set forth in *Majauskas v Majauskas* (61 NY2d 481 [1984]). The record reflects that the parties subsequently agreed that the May 31, 2001, date would be changed to February 15, 2008, and that the former wife's *Majauskas* percentage of the subject account would be 41%. The judgment further provided that the former wife was "entitled to . . . any gains or losses since that date," but it did not set forth a valuation date for the shares.

The qualified domestic relations order (hereinafter the QDRO) at issue here was dated December 18, 2008, and allocated to the former wife "41.00% of the [former husband's] account as of February 15, 2008." It does not specifically state, as the judgment does, that the former wife is entitled to a percentage of the number of shares in the subject account. The former wife took the position that the QDRO allocated to her 41% of the value of the account as of February 15, 2008, rather than the number of shares in it as of that date. Accordingly, the former husband moved in the Supreme Court, inter alia, in effect, to amend the QDRO to provide that the former wife is entitled to 41% of the number of shares in the subject brokerage account as of February 15, 2008.

The Supreme Court should have granted that branch of the former husband's motion which was, in effect, to amend the QDRO to provide that the former wife is entitled to 41% of the number of shares in the subject brokerage account as of February 15, 2008. Since the terms of the divorce judgment control (*see Biglin v Biglin,* 2 AD3d 380, 381 [2003]), the QDRO should have been amended so that its terms explicitly conform to those of the judgment, which allocate to the former wife 41% of the number of shares in the subject account, as of the date the parties subsequently agreed to, i.e., February 15, 2008. The record reflects that 41% of the number of shares in the subject account as of that date was 3,654. As noted above, the divorce judgment does not contain a valuation date for the shares, but the QDRO states that the "value of the securities distributed to the [the former wife] in cash shall be based on the closing daily price as of the day the investments are actually transferred from the [former husband's] account." On the transfer date, the former wife shall receive the value of 3,654 shares, effective that date or, in the alternative, 3,654 shares. Spolzino, J.P., Dillon, Miller and Dickerson, JJ., concur.