■ PATRICIA H. O'CONNOR, Now Known as PATRICIA HULIHAN, Respondent, v JOSEPH F. O'CONNOR, Appellant. [984 NYS2d 430]—

Lahtinen, J.P. Appeal from a judgment and order of the Supreme Court (Nichols, J.), entered June 7, 2013 in Columbia County, which, among other things, granted plaintiff's motion to direct entry of a domestic relations order, for a money judgment pursuant to Domestic Relations Law § 244 and for counsel fees.

The parties were married in 1974 and divorced in 2005. In a stipulation that was incorporated but not merged into the judgment of divorce, the parties—both employed in education—set forth the future division of their respective benefits from the New York State Teacher's Retirement System (hereinafter System). Briefly stated, they agreed that each party's pension would be divided pursuant to *Majauskas v Majauskas* (61 NY2d 481 [1984]), with the elected retirement option providing for continued payment of the additional payee's share after the retiree's death. However, they further agreed that, in the event that one party retired before the other, the party continuing to work would pay back as maintenance any pension amount received from the retiree until such time as both parties had

retired. They also agreed that "all the years of service that they have in the [S]ystem, will be counted toward their *Majauskas* share." As relevant here, they further set forth that defendant (hereinafter the husband) had "unused sick time and vacation time" and that he would pay plaintiff (hereinafter the wife) $10,000 "in full satisfaction of any claim she has now and in the future, to any marital portion of these benefits."

Shortly after the divorce, the husband filed a domestic relations order (hereinafter DRO) regarding the wife's pension; however, the wife neglected to file such a DRO regarding the husband's pension. On June 30, 2006, the husband submitted his application for retirement with an effective date of September 1, 2006 and, as per the parties' stipulation, selected as a retirement option "an alternative option per DRO." The System immediately notified him via telephone and follow-up letter that, since the wife had not filed a DRO, his option was not currently acceptable. The July 3, 2006 letter from the System encouraged him to consult his attorney and informed him that he had until September 30, 2006 to finalize his option, after which it would be irrevocable. Without informing the wife or consulting counsel, the husband instead elected the maximum retirement option, under which all payments to the wife would cease upon his death. In preparing for retirement, the husband further learned that, since he had worked briefly in a government job prior to June 1971, he could use a five-year final average salary and, significantly, include in such calculation the $91,000 he had received for unused sick pay and vacation pay, which resulted in a gross monthly pension of $7,082.85.

When the wife retired in July 2010, she learned that the husband had not used the option set forth in the stipulation when he had retired four years earlier. She then moved via order to show cause for various relief. Following a hearing, Supreme Court determined that the wife's *Majauskas* share of the husband's pension was $3,130.62 per month and directed entry of a DRO so that the System would pay such amount directly to the wife. Under the terms of the stipulation, such amount should have been paid to the wife as of July 2010 (when both parties had retired) and, thus, the court, after giving credit for some partial payments that the husband had made, awarded the wife $10,329.72 for her past due pension share from the husband. Since the husband's retirement option could not be modified and the option he had elected did not include a survivor's benefit to the wife as required by the stipulation, the court directed him to maintain a $800,000 life insurance policy with the wife as beneficiary. Supreme Court found that the

husband had willfully violated the parties' judgment of divorce and awarded the wife counsel fees of $10,465, as well as interest on the $10,329.72 for her past due pension share.* The husband appeals.

The husband initially argues that the wife's *Majauskas* share of his pension should have been calculated without including the $91,000 of accrued sick and vacation time in his final average salary because (1) the wife stipulated to receive $10,000 as full compensation for his sick and vacation time and (2) it was premarriage employment that put him in a tier of the System where he could include that amount in his final average salary. We are unpersuaded. "A settlement agreement incorporated into a divorce judgment is subject to the principles of contract interpretation and, if its language 'is unambiguous, its terms are given their plain and ordinary meaning, and the parties' intent is determined without resort to extrinsic evidence' " (*Van Orden v Van Orden*, 96 AD3d 1129, 1129 [2012], quoting *Dagliolo v Dagliolo*, 91 AD3d 1260, 1260 [2012]). The clear intent of the $10,000 that the wife agreed to accept in the stipulation pertained to the cash payout that the husband would receive for sick and vacation time (which turned out to be $91,000), and did not reflect in any fashion—absent explicit language—an agreement to alter for *Majauskas* purposes the method by which the husband's pension was calculated. This is further made clear by the language in the stipulation that "all the years of service that [the parties] have in the [S]ystem will be counted toward their *Majauskas* share." Such language also undermines the husband's additional contention that the $91,000 should be excluded from his final average salary for *Majauskas* purposes, because his right to include that amount was based on tier rights available to him when he entered the System before his marriage. Moreover, neither *Majauskas* nor any precedent cited by the husband provides authority to, in essence, change a pension plan or tier from the one actually received to a less desirable one because of a retiree's premarital entry into the System. *Majauskas* provides a mathematical calculation to determine the value of a marital share of a pension, and it takes into account the premarriage and postmarriage periods (*see e.g. Matter of Gursky v Gursky*, 93 AD3d 1127, 1128 [2012]). Applied to this case, the wife's share of the husband's pension was about 44% despite a long-term marriage primarily because of the husband's premarriage years in the System.

---

* Although there is some confusion in the record about the date that the interest started, the wife acknowledges that the correct date is December 2, 2010.

There is sufficient support in the record for Supreme Court's decision to award the wife interest on the past due pension payments, as well as counsel fees. Prejudgment interest is appropriate where there is a willful violation (*see* Domestic Relations Law § 244; *Rivers v Rivers*, 35 AD3d 426, 428-429 [2006], *lv denied* 8 NY3d 812 [2007]; *Vicinanzo v Vicinanzo*, 233 AD2d 715, 716 [1996]) and an application for counsel fees, made pursuant to Domestic Relations Law § 238, is generally addressed to the discretion of the trial court (*see Cheruvu v Cheruvu*, 61 AD3d 1171, 1174 [2009]). Although the husband initially attempted to file his retirement option in compliance with the parties' stipulation and it was rejected because the wife had failed to file an appropriate DRO, he was notified of the reason for the rejection at a time when he still had nearly three months in which to make his irrevocable retirement election. Instead of contacting counsel or advising the wife of the problem (or even electing an option that provided a survivor benefit), he immediately elected the maximum benefit, which had no survivor benefit. The System sent him a letter dated July 3, 2006 noting that he had until the end of September 2006 to finalize his retirement election and encouraging him to "consult with your attorney to ensure your election of the maximum benefit is in compliance with your divorce decree and/or Separation Agreement." He made no effort to contact counsel or the wife. Under such circumstances, Supreme Court did not err in granting interest.

The award of counsel fees to reimburse the wife for the expenses of this enforcement action was not an abuse of discretion. However, the portion of the requested fee attributable to the preparation of the DRO should not have been included in the award. The record reflects that legal services from April 27, 2010 through July 15, 2010 totaling $1,525 were incurred for the preparation of the DRO and not associated with this enforcement action. Accordingly, counsel fees shall be reduced to $8,940 ($10,465—$1,525).

We agree with the husband that the life insurance obligation imposed upon him lacks support or explanation in this record. The purpose of the insurance policy is not to impose a penalty, but to compensate the wife for the survivorship benefit that she lost (*see Haydock v Haydock*, 254 AD2d 577, 579 [1998]). Initially, we note that it is not clear from the judgment and order whether the husband must maintain such policy simply for the duration of the wife's life expectancy (i.e., 21.5 years as of Supreme Court's decision date) or even longer if he is still alive. Moreover, there is nothing in the record as to how the $800,000

amount was determined, its cost, or why a declining term (even if calculated on a term longer than the wife's life expectancy to ensure the availability of a benefit for her) would not more accurately compensate the lost benefit (*see Richter v Richter*, 77 AD3d 1470, 1471 [2010]; *Holterman v Holterman*, 307 AD2d 442, 442-443 [2003], *affd* 3 NY3d 1 [2004]). We therefore remit to permit the parties—if they cannot agree—to produce pertinent proof as to such issue.

McCarthy, Garry and Egan Jr., JJ., concur. Ordered that the judgment and order is modified, on the law, without costs, by (1) reducing the award of counsel fees to $8,940, and (2) reversing so much thereof as required defendant to maintain for an undefined duration a $800,000 life insurance policy designating plaintiff as beneficiary; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision and, pending said proceedings, the $800,000 life insurance obligation shall remain in effect as a temporary order; and, as so modified, affirmed.