Hillsborough
No. 87-328

HOLLY H. ABRAMS

v.

ANDREW L. ABRAMS

April 7, 1989

*Upton, Sanders & Smith*, of Concord (*Ernest T. Smith, III*, on the brief and orally), for the plaintiff.

*Epstein, Burke, MacIntosh & DeVito*, of Concord (*Matthew S. Epstein* on the brief and orally), for the defendant.

BATCHELDER, J. This is an appeal from a decree of the Superior Court (*Dunn*, J.) approving the orders of the Master (*Mayland H. Morse, Jr.*, Esq.) in the parties' divorce action. We affirm.

The principal issue in the case centers upon the inclusiveness of the term "marital assets"; and, as the defendant points out, "[t]he majority of the arguments relate to trust funds received by the defendant from his family prior to his marriage to the plaintiff." The funds in dispute were found by the court to amount to $418,314 at the time of the hearing. There is no dispute in this case concerning either the award of custody of the four minor children to the plaintiff or the separate stipulation incorporated in the court's decree which sets forth visitation rights agreeable to the wishes of the parties.

At the time of the hearing, the plaintiff was a thirty-one-year-old registered nurse who, apparently shunning her early career choice, was engaged in a separate business enterprise as a real estate appraiser while living in the family homestead in Goffstown. The defendant was a forty-four-year-old medical doctor specializing in plastic surgery, living in his new home in the town of Bedford. Each party was awarded substantial assets which had, for the most part, been acquired during the marriage as investments of one sort or another.

The timing and methodology of the transfer, as well as the origin of the funds in question, are instructive and underlie the result reached by the master and, consequently, the result reached by this court.

The source of the funds had been a trust established for the benefit of the defendant when he was a child. The funds had been placed in the trust by his grandfather and his father, and the corpus had been distributed to him as he reached the ages of 21, 25, 30, and 35, at which time it terminated and the defendant was then free to do as he wished with the funds in dispute.

In due course, as each of the parties' four children was born, the defendant's parents, Mildred and Herbert Abrams, established an irrevocable trust in the name of that child, with an initial cash contribution of $5,000. The defendant was named by the settlors

as trustee. The terms of the trusts were such that the defendant was given discretion to pay income and principal, if necessary, for the support, health, welfare and education of each beneficiary.

On February 22, 1985, with full knowledge that divorce proceedings were imminent, and without consultation or notice to the plaintiff, the defendant transferred the $418,314 in question in approximately equal shares to the children's existing irrevocable trusts, without consideration. Although the defendant disagrees with the court's valuation of the marital home decreed to the plaintiff, the focal point of the defendant's resistance to the decree is on its treatment of the so-called trust funds as marital assets. The defendant contends that the court abused its discretion in ordering him to pay the plaintiff one-half of the amount he had transferred to the four irrevocable trusts.

Trial courts have the power to set aside a spouse's unilateral transfers of marital property which involve fraud, material misrepresentation, overreaching, duress, coercion, or intimidation made in order to thwart the legitimate interests of the other spouse in that property. See *Janvrin v. Curtis*, 63 N.H. 312 (1885); *Stephenson v. Stephenson*, 111 N.H. 189, 193, 278 A.2d 351, 355 (1971); *In re Marriage of Hurth*, 437 N.E.2d 1042, 1047 (Ind. 1982). The master was warranted on the facts before him in finding as he did that the transfer was an effort to shelter a "large block of marital assets" from the consequences of the divorce. In *Lawlor v. Lawlor*, 123 N.H. 163, 459 A.2d 238 (1983), we affirmed the inclusion as a marital asset of a vested but unrealized inheritance. It would fly in the face of such reasoning to hold now that an inheritance already realized and acquired, and one relied upon, in part, from time to time to support the marital household, was not an asset to be considered under the equitable powers of the court in the division of marital property, within the confines of the sound exercise of discretion.

Discretion is not an exact science, and the party who seeks to overturn its exercise has the burden of showing that it was somehow abused. See *Marsh v. Marsh*, 123 N.H. 448, 451, 462 A.2d 126, 128 (1983). The scope of discretion which may be exercised in the division of marital property is broad, but it is not without limits. *Hodgins v. Hodgins*, 126 N.H. 711, 715, 497 A.2d 1187, 1190 (1985); RSA 458:16-a, II (Supp. 1988). This court in recent years has suggested factors which may properly be considered in the evaluation and division of marital assets. *E.g.*, *Hodgins*, *supra* at 715, 497 A.2d at 1190 (vested pension rights); *Rahn v. Rahn*, 123

N.H. 222, 225, 459 A.2d 268, 269–70 (1983) (length of marriage); *Ebbert v. Ebbert*, 123 N.H. 252, 255, 459 A.2d 282, 285 (1983) (tax consequences); *Marsh, supra* at 450, 462 A.2d at 128 (contributions of the parties to the marriage).

The court, which is the trier of fact, is in the best position to assess and weigh the evidence before it because it has the benefit of observing the parties and their witnesses. This is especially true in cases dealing with family law, where the judge is required to make findings and rulings in the delicate areas of custody and visitation and where not only the financial health and stability of the parties are at stake, but also the actual quality of their post-divorce lives. In this case, the court had the benefit of lengthy testimony from Holly and Andrew Abrams, tempered by cross-examination. We have the transcript of that testimony and the exhibits received in evidence, but the trial court had more. The court saw and observed the parties.

The defendant's principal attack on the court's findings is that the corpus of the defendant's trust fund somehow maintained an identity separate and distinct from the parties' marital assets even after the trust had terminated and its corpus vested outright in the defendant. The record in this case supports the view that Andrew Abrams is cautious in business affairs. The court found that the transfers were made to reduce the marital estate in anticipation of the divorce. On the record before us, we cannot say that the court's finding lacked an evidentiary basis.

Having found that the funds in question were in fact marital assets and that they had been impermissibly sequestered from the operation of any decree, the court ordered that Andrew satisfy his accountability by giving Holly a promissory note in the amount of $209,157 at 10% interest, to be amortized monthly over a 10-year period with prepayment provisions. Having thus accounted for Holly's share of the $418,314 fund, the court permitted Andrew to use the income from the childrens' individual trusts to defray at least in part his further obligation to pay child support in the amount of $900 per month, per child, during their minority.

It is important to note that the court has not disturbed the corpus of the children's individual trusts, and that the defendant's many arguments concerning the lack of an action against the trust, trustee or beneficiaries and lack of notice to them are, thus, of no avail. The due process arguments raised by the defendant are not convincing, because in this case there has been no deprivation of property interests of the children in their respective trusts, and the

defendant has merely been reminded by the court that under the trust documents he has the discretionary right as trustee to apply their income toward child support. *See Wireman v. Wireman*, 168 Ind. App. 295, 309, 343 N.E.2d 292, 310 (Ind. App. 2d Dist. 1976).

■ The defendant also claims that he had an entitlement under Superior Court Administrative Rules 12-9 and 13-9 to have his case heard before a marital master, as distinguished from a regular master. We find no indication in either rule that the superior court intended to divest regular masters of the authority to hear marital cases. Administrative Rule 12-9 authorizes marital masters to hear marital cases, while Administrative Rule 13-9 gives regular and special masters broader authority to hear all issues cases. *See* SUPER. CT. ADMIN. RS. 12-9, 13-9; *Brooks v. Padula*, 125 N.H. 668, 670–72, 485 A.2d 1032, 1033–34 (1984). In either event, of course, the master's report is subject to review by the justice who approves it. The defendant's exception in this regard is not well taken.

*Affirmed.*

All concurred.