## NORMAN H. LOWE *v.* ANNE B. LOWE
### (AC 19019)
### (AC 19191)

Foti, Mihalakos and Spallone, Js.

Argued May 5—officially released July 18, 2000

*C. Michael Budlong* and *Campbell D. Barrett,* for the appellant-appellee (defendant).

*Andrew J. Spinnell,* with whom, on the brief, were *Wendy A. Grispin* and *Sheldon A. Rosenbaum,* for the appellee-appellant (plaintiff).

SPALLONE, J. These consolidated appeals arise from the postjudgment financial orders of the trial court that stem from a 1993 judgment of dissolution in New Hampshire. In appeal no. 19019, the defendant, Anne B. Lowe, claims that the court, *Owens, J.,* in fashioning new financial orders after the New Hampshire court's orders had been vacated, improperly adopted the terms of the parties' original stipulation for judgment, which had been set aside on the basis of fraud by the court, *Axelrod, J.* In appeal no. 19191, the plaintiff, Norman H. Lowe, claims that the court, *Owens, J.,* improperly (1) awarded alimony to the defendant in contravention of New Hampshire law and (2) failed to classify its alimony award as being periodic in nature. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of these appeals. Prior to dissolution of their twenty-three year marriage, the parties, who were residents of New Hampshire, entered into a stipulation for permanent orders wherein they agreed that the plaintiff would make alimony payments to the defendant for a period of five years in the amount of $2000 per month for the first two years and $1200 per month for the next three years, at which time the plaintiff's alimony obligation would terminate. The parties also agreed that the defendant would receive the entire net proceeds from the sale of the jointly owned marital residence and one-half of the plaintiff's pension plan. The plaintiff filed a financial affidavit in conjunction with the stipulation. On January 26, 1993, the New Hampshire Superior Court entered judgment dissolving the marriage and establishing financial orders in accordance with the stipulation.

The plaintiff subsequently moved to Connecticut. The defendant, believing that the plaintiff's financial affidavit did not accurately reflect his income and assets, filed the New Hampshire judgment in the Superior Court pursuant to General Statutes § 46b-71.[1] Thereafter, the defendant moved to open the judgment.

On June 14, 1996, the court, *Axelrod, J.*, found that the plaintiff had failed to include in his financial affidavit a guaranteed $20,000 minimum commission over and above his $80,000 salary, the pro rata share of which he received during the last week of December, 1992.[2] On the basis of this finding, the court granted the defendant's motion to open the judgment and ordered that all previous financial orders be set aside and vacated. The court concluded that "the plaintiff made a fraudulent representation as to his income for the purpose of and with the intention of causing the defendant to act upon it, and that the defendant in fact did act upon the fraudulent representation. The plaintiff's misrepresentation was intended to induce and was material to the defendant's decision to enter into the stipulation that she entered into in justifiable reliance upon the plaintiff's representation of income. The misrepresentation by the plaintiff of his income was intended to induce and was material to the defendant's decision to enter

---

[1] General Statutes § 46b-71 provides in relevant part: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended . . . .

"(b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut . . . ."

[2] The plaintiff commenced employment as a salesman with Steag Industries, Inc., in 1992.

into the separation agreement between the parties. The court, therefore, concludes that the defendant has met her burden of proving by clear and convincing evidence fraud on behalf of the plaintiff."

Thereafter, the matter was tried to the court, *Owens, J.*, in October, 1998. The court considered all of the financial issues, including the alimony award and the property distribution, in determining the amount due and owing the defendant as a result of the plaintiff's failure to disclose the $20,000 commission. The court also considered the cause of the marital breakdown and heard testimony regarding the education, employment history, financial condition and health of the parties from the beginning of the marriage in 1969 until the October, 1998 trial.

The court rendered its decision on October 26, 1998, and made the following findings as to the parties' respective financial positions at the time of the 1993 judgment of dissolution. The defendant was a college graduate who had worked as a real estate agent and an interior designer during her marriage. The court thus concluded that the defendant "was and still is highly employable." During the parties' two year separation prior to the dissolution, the plaintiff paid the defendant temporary alimony of $1000 per month. At the time of the dissolution, the defendant also received $38,700 from the sale of the jointly owned marital home and $65,000 from the plaintiff's pension plan. In addition, the defendant received paintings, antiques and most of the parties' other personal property. The court further noted that the plaintiff had paid to the defendant an additional sum of $44,052 as temporary alimony as of October 16, 1998. The plaintiff, by contrast, kept only a few articles of personal property. The court found that, "[e]xcept for his employment . . . [the plaintiff] left the marriage with no assets other than one-half of his pension."

Applying New Hampshire law,[3] the court concluded that "the fraud that was perpetrated can best be redressed by readjusting the alimony that had been agreed upon by the parties in January of 1993." The court took cognizance of the fact that "[o]ther than [the] plaintiff's employment, there were no assets that would appreciate in the future. The marital residence was sold, and the other assets were readily disposed of. None of the assets in the present case were prone to substantial fluctuations at the time of the original dissolution. When there is a clearly delineated item that is fraudulently omitted and that is easily juxtaposed, there is no need or requirement to destroy the efficacy of the original voluntary agreement."

The court determined that it was not necessary to ignore the original agreement between the parties, stating that "[i]t would strain judicial resources and could lead to serious injustices if a party to a marital dissolution who subsequently discovers some omission that is determined to be fraud to then allow that party to come back at a later date and completely extinguish and destroy the original agreement. Obviously, if there is a pattern of fraud that completely permeates the dissolution and causes a serious injustice, the court would be justified in not restoring . . . the parties to the position they were in."

Consequently, in considering both the alimony award and the property distribution set forth in the 1993

---

[3] N.H. Rev. Stat. Ann. § 458:19 IV (b) (1999), provides in relevant part: "In determining the amount of alimony, the court shall consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded . . . vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party . . . and the federal tax consequences of the order."

Section 458:19 IV (d) further provides: "The court may also consider the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates and the noneconomic contribution of each of the parties to the family unit."

agreement, the court decided that no change was required with regard to the property distribution, and ruled that "[t]he parties shall retain all property, personal and real estate that they may each own free and clear of any claims of the other." The court found that a change was required, however, in the alimony award. Utilizing the 1993 agreement as a starting point, the court added $7500 in alimony to each of the first two years of the five year agreement and $5000 per year to each of the next three years. In addition, the court ordered that the plaintiff pay interest to the defendant at the rate permitted under New Hampshire law, which amounted to $12,270. The court also ordered the plaintiff to pay attorney's fees to the defendant in the amount of $7000 plus costs of $37.74. The court observed that because the plaintiff had conceded, pursuant to his proposed orders dated October 14, 1998, that all temporary alimony paid to that date should be the property of the defendant, the court did not consider this concession in making its determination. The court thus determined that the $44,052 in temporary alimony was the property of the defendant.

The plaintiff contested the $44,052 temporary alimony award by filing a postjudgment motion to reargue, which the court denied. Thereafter, each party filed a separate appeal.

"Our standard of review is well settled. We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Lake* v. *Lake*, 49 Conn. App. 89, 91, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998).

I

In appeal no. 19019, the defendant claims that the court abused its discretion and committed error as a matter of law when it fashioned the new financial orders by using as a framework the parties' original stipulation for permanent orders, which thereafter was set aside on the basis of fraud. The defendant cites *Gunnison* v. *Abbott*, 73 N.H. 590, 592, 64 A. 23 (1906), for the proposition that once a final judgment is set aside or vacated, it becomes absolutely void. She claims that the court should have conducted a trial de novo on the financial issues, but failed to do so. We find no merit to the defendant's claim.

General Statutes § 46b-71 (b) provides in relevant part: "[I]n modifying, altering, amending, setting aside, vacating, staying or suspending . . . [a] foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling." See also *Vitale* v. *Krieger*, 47 Conn. App. 146, 149, 702 A.2d 148 (1997) ("when modifying a foreign matrimonial judgment, the courts of this state must apply the substantive law of the foreign jurisdiction").

Under New Hampshire law, the court is not compelled to alter an existing divorce decree, even where fraud is shown, if it concludes that the decree was "fair and equitable under all the circumstances." *Rollins* v. *Rollins*, 122 N.H. 6, 9, 440 A.2d 438 (1982). It therefore stands to reason that under *Rollins*, the court, *Owens*, *J.*, did not act improperly when it fashioned new financial orders by making appropriate adjustments and alterations to the original orders.

Moreover, contrary to the plaintiff's claim, the court did conduct a complete trial de novo. At trial, the court heard evidence concerning the duration of the marriage, the cause of its breakdown, and evidence regarding the parties' ages, education, health, employment and

financial circumstances throughout the marriage. The court also considered the parties' stipulation for permanent orders and the New Hampshire judgment which, by virtue of § 46b-71 (b) became "a judgment of the court of this state." Indeed, the court could not ignore that agreement, because most of its terms already had been executed. The marital home had been sold, the plaintiff had paid the capital gains tax and proceeds from the sale had been distributed to the defendant. The defendant also had received one-half of the plaintiff's pension and most of the parties' personal property. These actions could not be undone.

The court, under these circumstances, was required to exercise its equitable powers and broad discretion in framing new financial orders. See *Abrams* v. *Abrams*, 131 N.H. 522, 524, 556 A.2d 1173 (1989) (scope of discretion in divorce action is broad). In fashioning these orders, the court observed that "serious injustices" could result if a party found responsible for a fraudulent omission could come back at a later date and completely extinguish and destroy the original agreement, absent a "pattern of fraud." Here, where no such pattern of fraud was found, the court was not obligated to completely reject the parties' stipulation merely because the judgment was vacated. See *Rollins* v. *Rollins*, supra, 122 N.H. 9. The court, however, did not simply adopt the terms of the parties' previous stipulation, as the defendant suggests. It also considered New Hampshire law, all of the evidence adduced at trial and the parties' respective financial positions in 1993. Accordingly, the court reasonably could have determined that the best way to redress the plaintiff's fraud was to adjust the alimony award previously agreed on by the parties in January, 1993.

The defendant argues that the holding in *Rollins* applies only to the standard a court must employ in the preliminary hearing when a motion to open is before

the court and not to the standard used in the de novo trial conducted after a judgment is opened. We do not agree. The *Rollins* court specifically referred to the fact that its holding applied to the underlying judgment when it stated that, "[t]hough the master must hear the evidence, *he is not compelled to alter the existing decree* if he concludes that it was fair and equitable under all the circumstances." (Emphasis added.) Id. The court, therefore, acted in accordance with applicable law and did not abuse its discretion in rendering the new financial orders.

## II

## A

In appeal no. 19191, the plaintiff first claims that the court abused its discretion by improperly awarding alimony to the defendant in contravention of New Hampshire law. He argues that the parties had a relatively moderate standard of living during their marriage, and that the defendant was self-supporting and did not need alimony. He also argues that even if alimony was properly awarded, the amount was excessive. We disagree.

"[T]rial courts have broad discretion in matters involving alimony . . . ." See *Marsh* v. *Marsh*, 123 N.H. 448, 451, 462 A.2d 126 (1983). Under New Hampshire law, on the motion of either party for alimony payments, the court shall make orders for the payment of alimony to the party "in need of alimony," or may order alimony "when such orders would be just and reasonable." N.H. Rev. Stat. Ann. § 458:19 I, II. In making such a determination, "[t]he court . . . is in the best position to assess and weigh the evidence before it because it has the benefit of observing the parties and their witnesses. This is especially true in cases dealing with family law . . . where not only the financial health and stability of the parties are at stake, but also the actual quality

of their post-divorce lives." *Abrams* v. *Abrams*, supra, 131 N.H. 525.

In the present case, it was within the discretion of the court to determine that the parties enjoyed a station of life during their marriage that justified an award of alimony to the defendant. See *Marsh* v. *Marsh*, supra, 123 N.H. 451. Furthermore, the fact that the court reaffirmed the prior award of alimony and increased it due to the plaintiff's fraud implies that the court determined that there was a need for alimony, and that such an award was just and equitable. See N.H. Rev. Stat. Ann. § 458:19, I, II. The question on appeal is whether there was sufficient evidence to support such a determination. See *Lake* v. *Lake*, supra, 49 Conn. App. 91.

Our review of the record and briefs discloses that ample evidence was presented at trial to support the conclusion that the defendant was in need of financial support, and that the alimony awarded was just and equitable. See id. The plaintiff's contention that the defendant did not need alimony is somewhat disingenuous in light of the fact that the parties voluntarily agreed on alimony payments in their prior stipulation for permanent orders. That being said, New Hampshire law permits the court to take into account the style of living to which the parties were accustomed during the marriage in deciding whether to award alimony. See N.H. Rev. Stat. Ann. § 458:19 I. Here, testimony indicated that during the late 1980s, the family lived comfortably in New Hampshire. The parties sent both of their children to private school, maintained a horse, owned several automobiles, including an Acura, a Volvo and a Saab, and took numerous vacations, including trips to Jamaica and ski trips to Switzerland. It was also clear from the evidence adduced at trial that the plaintiff was the primary wage earner and that, absent financial assistance from the plaintiff, the defendant would be unable to continue supporting herself in accordance

with the parties' marital lifestyle, despite the court's finding that she "was and still is highly employable." Accordingly, the court did not abuse its discretion in making adjustments to the original financial orders and increasing the alimony award. See id.

The plaintiff nonetheless argues that the court abused its discretion when it failed to credit him for the $44,052 in temporary alimony previously paid to the defendant. We do not agree.

In its October 26, 1998 memorandum of decision, the court stated that "[t]he [plaintiff], pursuant to his proposed orders dated October 14, 1998, concedes that all temporary alimony paid to date shall be the property of the defendant, and the court has not considered this concession in making its determination." The plaintiff subsequently filed a motion to reargue this issue, which was thoroughly briefed. In his motion, the plaintiff contended, as he does on appeal, that he was willing to concede the temporary alimony only if the court did not award additional alimony as part of a final court order. The court denied the plaintiff's motion. It is settled law that the court has broad discretion in matters involving alimony; see *Marsh* v. *Marsh*, supra, 123 N.H. 451; and is in the best position to assess and weigh the evidence before it. See *Abrams* v. *Abrams*, supra, 131 N.H. 525. We conclude, therefore, that the judgment of the trial court was not unreasonable, given the facts and circumstances of this case, and did not constitute an abuse of discretion.

B

The plaintiff next claims that the court improperly failed to classify the new alimony order as either periodic or lump sum. We have found no statutory or decisional law in New Hampshire or Connecticut requiring a court to classify alimony as either a periodic or lump sum payment. The nature of the order speaks for itself.

The applicable New Hampshire statute, § 458:19 IV (a), provides that "[t]he court may make orders for alimony in a lump sum, periodic payments, or both." To be considered periodic, an alimony order must include more than one payment. In this case, the court ordered the alimony to be paid in one payment. Under the plain language of the New Hampshire statute, the alimony as framed by the court thus constituted a lump sum payment.

We also note that this court, in ruling on the defendant's motion for review, reversed the trial court's granting of the plaintiff's motion for a stay of judgment, which claimed that the alimony order, being periodic, was exempt from the automatic stay provision of Practice Book § 61-11. Our vacation of the order of the court indicates our determination that the alimony order was lump sum in nature and subject to an automatic stay.

Accordingly, we hold that in appeal no. 19019, the trial court acted properly and in accordance with applicable law in fashioning the new financial orders.

We also hold that in appeal no. 19191, the trial court properly awarded alimony in accordance with New Hampshire law and properly awarded a lump sum alimony payment.

The judgment is affirmed.

In this opinion the other judges concurred.