Strafford
No. 84-445

BERNICE C. HODGINS

v.

ELWIN B. HODGINS, JR.

July 1, 1985

*Gregoire, Calivas, Morrison & Gray,* of Dover (*Douglas C. Gray* and *Anthony S. Hartnett* on the brief, and *Mr. Gray* orally), for the plaintiff.

*Sanders & McDermott P.A.,* of Hampton (*Wilfred L. Sanders, Jr.,*

and *Lawrence M. Edelman* on the brief, and *Mr. Sanders* orally), for the defendant.

BROCK, J.   The plaintiff in this divorce action, Bernice Hodgins, appeals from a final order recommended by a Master (*Stephanie T. Nute*, Esq.) and approved by the Superior Court (*Contas*, J.), as modified after rehearing and approved by *Gray*, J. The principal issues before us are: (1) whether the award of alimony to the plaintiff was adequate, and (2) whether the master, in distributing the parties' property, took proper account of Mr. Hodgins's pension plan. We affirm on the first issue and remand for further findings of fact on the second.

The parties were married on March 7, 1959. Mr. Hodgins has been an airline pilot since 1962. In 1983, his income was approximately $130,000. Mrs. Hodgins worked as a secretary prior to her marriage, and as a part-time secretary for five years in the 1960's. In late 1980 she began working weekends as a clerk at Exeter Hospital. In 1983 she acquired a license to sell real estate, and since then has worked full-time selling real estate, in addition to her work at the hospital. Her income in 1983 was $8,206.08.

Mrs. Hodgins filed for divorce on September 16, 1982. The master found that a divorce should be granted her due to "treatment of the Plaintiff by the Defendant to seriously injure health or endanger reason." *See* RSA 458:7, V. The final decree, as modified after rehearing, awarded Mrs. Hodgins $250 per week in alimony. Mrs. Hodgins was also awarded real and personal property valued in excess of $125,000, and was ordered retained as principal beneficiary on two life insurance policies issued to Mr. Hodgins. Mr. Hodgins received property valued at less than $40,000. He retained, however, the rights to his airline retirement pension, subject to a proviso whereby, after Mr. Hodgins's retirement, any alimony due to Mrs. Hodgins would be paid out of the pension proceeds if other sources were inadequate.

Although Mr. Hodgins has not yet retired, his right to his pension is fully vested; *i.e.*, he cannot lose it even if his employment with the airline terminates before retirement. The master found, despite some evidence to the contrary, that the pension had "cash surrender value, redemption value, lump sum value and value realizable after death." She did not assign a specific monetary amount to these values, but granted the plaintiff's request for a finding that the pension had a "present value" in excess of $150,000. The divorce became effective on June 12, 1984.

"Notwithstanding the numerous considerations involved, trial courts have broad discretion in matters involving alimony and

property distribution, and we will uphold their decisions unless there was an abuse of that discretion." *Marsh v. Marsh*, 123 N.H. 448, 451, 462 A.2d 126, 128 (1983).

■ We find no abuse of discretion in the award of alimony here. There was evidence that, at the time of hearing, Mrs. Hodgins's income plus alimony was not sufficient to meet her needs, "in light of the relatively high standard of living enjoyed by the parties during the marriage and the defendant's ability to pay." *Russman v. Russman*, 124 N.H. 593, 596, 474 A.2d 1017, 1019 (1984). We note, however, that the plaintiff had only begun to work full time a few months before the hearing. On this record, the master could have found the plaintiff to be capable of earning enough additional income, through her recently acquired job as a seller of real estate, to make up any shortage. *See Parker v. Parker*, 122 N.H. 658, 662, 448 A.2d 414, 416 (1982).

We will not consider the plaintiff's argument that a higher alimony award was called for by the master's finding of fault in the defendant. That issue was not raised by objection, exception or motion in the trial court, and is thus not properly before us. *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). We will also not consider the argument that the master improperly vacated an order attaching the defendant's wages due to an arrearage in alimony payments. The arrearage has been paid and the question is moot.

■ We now turn to the question of the property distribution. By statute, the trial court may make such a distribution of property "as may be deemed just . . . ." RSA 458:19. We have construed this to mean that, while property must be distributed equitably, it need not always be distributed equally. *See Grandmaison v. Grandmaison*, 119 N.H. 268, 271, 401 A.2d 1057, 1059 (1979).

■ A variety of circumstances may justify an unequal distribution; *e.g.*, the fact that the marriage was of short duration, *see Rahn v. Rahn*, 123 N.H. 222, 225, 459 A.2d 268, 269–70 (1983); the association of a particular asset exclusively with one party since before the marriage, *Grandmaison supra*, or its recent acquisition through one party's family relationship, *Henderson v. Henderson*, 121 N.H. 807, 810, 435 A.2d 133, 135 (1981); the parties' relative abilities to support themselves, *Buckner v. Buckner*, 120 N.H. 402, 404–05, 415 A.2d 871, 873 (1980); the need of one party to provide a home for minor children, *Comer v. Comer*, 110 N.H. 505, 508, 272 A.2d 586, 587–88 (1970); the need to assure both parties' security for the future, *MacDonald v. MacDonald*, 122 N.H. 339, 342, 443 A.2d

1017, 1018 (1982); and the existence of fault, *Ebbert v. Ebbert*, 123 N.H. 252, 255, 459 A.2d 282, 284–85 (1983). It follows, however, that in the absence of any such special circumstances the distribution should be as equal as the court can make it. *See generally Rahn, supra* at 225–26, 459 A.2d at 269–70. If, in a particular case, the court concludes that an unequal distribution of property is warranted, it should state its reasons and make specific findings and rulings supporting its decision.

We must therefore address the question of what consideration Mr. Hodgins's pension can be given in the distribution of property here. Our prior holdings have recognized that an unmatured pension, particularly when it is fully vested, is an asset that should be considered in any equitable property distribution. *MacDonald, supra* at 341–42, 443 A.2d at 1018; *see also Baker v. Baker*, 120 N.H. 645, 648–49, 421 A.2d 998, 1001 (1980); *Azzi v. Azzi*, 118 N.H. 653, 657, 392 A.2d 148, 150 (1978).

We have also recognized, however, that when "retirement benefits do not have value realizable after the husband's death, the ability of the trial court to allocate them in an equitable division of property is most difficult." *Baker, supra* at 648, 421 A.2d at 1000 (citation omitted). We have further held that:

> "When pensions are in issue, the parties must provide the master or trial court with more specific information in order to assure that their assets are divided fairly, [including] the following: whether the pension is vested, the amount of its cash surrender value, loan value, redemption value, lump sum value, and value realizable after death . . . ."

*MacDonald, supra* at 342, 443 A.2d at 1018.

The evidence concerning these values and the benefits payable upon retirement for the pension in this case was inconclusive at best, and the master did not allocate a specific value to the pension in making the property distribution, other than the "present value" of at least $150,000. In view of the resulting apparent disparity in the value of the property distributed to the respective parties, we must remand the case to the trial court for reconsideration of its order distributing the property of the parties.

If it is possible for the court to ascertain the actual and contingent values for Mr. Hodgins's pension, it should do so. In many cases, however, the nature of a pension will make it impossible to compute the foregoing amounts in any meaningful way. *See gener-*

*ally* 24 Am. Jur. 2d *Divorce and Separation* §§ 948–49 (1983). In such cases, where it is nevertheless clear that the pension in question has some significant value, the problem of valuation may be avoided, and the risks of uncertainty evenly placed upon the parties, by a decree providing "that upon maturity of the pension rights the recipient pay a portion of each payment received to his or her former spouse. . . ." *Majauskas v. Majauskas*, 61 N.Y.2d 481, 486, 474 N.Y.S.2d 699, 701, 463 N.E.2d 15, 17 (1984); *accord Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn. 1983).

■ Such a decree must take account of the fact that only those pension benefits which are attributable to the retiree's employment during the marriage are subject to distribution. *See Majauskas, supra* at 485–86, 474 N.Y.S.2d at 701, 463 N.E.2d at 17; *see also Janssen, supra* at 756.

■■ Assuming *arguendo* that, on remand, the trial court were to find such a decree appropriate in this case, and similarly assuming that an equal distribution were to be called for, the decree would direct Mr. Hodgins, upon commencement of his pension benefits, thereafter to pay for Mrs. Hodgins one-half of a percentage of each benefit payable to him, less taxes. The percentage would be derived by dividing the number of months Mr. Hodgins was employed, during the marriage and prior to commencement of the divorce proceedings, by the total number of months of credits he will have earned toward his pension as of the date benefits commence. *See Majauskas, supra* at 487–88, 474 N.Y.S.2d at 702, 463 N.E.2d at 18. A decree of this type should also include any further orders necessary to insure that the spouse's share of the pension remains intact.

■■ When a decree of this type is appropriate, the parties' remaining assets should be distributed in the normal manner. On the other hand, when the pension rights may be assigned a reliable monetary value, they may be included in the general distribution of property, although it may still be advisable to defer distribution of that particular asset until the pension becomes payable, if this would maximize the benefit to both parties. *See Majauskas, supra* at 486, 474 N.Y.S.2d at 701, 463 N.E.2d at 17; *see also* 29 U.S.C.A. § 1053(e) (possible loss of vested rights if present value of pension can be distributed before payments would normally commence).

■ A decree of the type described above would not be appropriate when the pension under consideration does not have substantial value at the time of the divorce, either because the amount of benefits attributable to employment during the marriage is small or

because the prospective retirement date (or the date when payments would normally commence) is far in the future. In such cases, the difficulties of administering this type of decree would outweigh whatever benefit the decree might produce.

On the question of alimony, the trial court's decision is affirmed. On the question of property distribution, the case is remanded to the superior court for further proceedings in conformance with this opinion.

*Affirmed in part; reversed in part; remanded.*

All concurred.