Hillsborough
No. 89-344

PHILLIP B. BLANCHARD

v.

JUDY G. BLANCHARD

July 23, 1990

*Runyon and Sweeney P.A.*, of Peterborough (*L. Phillips Runyon, III*, on the brief), by brief for the plaintiff.

*Duffy and Laufer*, of Manchester (*Peter J. Duffy* on the brief), by brief for the defendant.

JOHNSON, J. The plaintiff, Phillip B. Blanchard, appeals the divorce decree recommended by the Marital Master (*Peter J. Bourque*, Esq.) and approved by the Superior Court (*Groff*, J.). The decree treats Phillip's military retired pay as divisible property and awards the defendant, Judy G. Blanchard, fifteen percent of it. We affirm.

When Judy and Phillip married in October 1968, Judy was an office manager in a large corporation and Phillip was an officer in the Air Force. Phillip had already served in the military for fifteen years, and he continued to do so until 1983, approximately one year before

the parties separated. Judy, on the other hand, testified that she abandoned her career in order to care for her children full-time and support her husband's military career. Phillip now receives $1,755 per month in non-disability retired pay from the United States Air Force; Judy receives no pension payments or other retirement benefits.

On appeal, Phillip objects to the portion of the master's decision which reads: "The defendant [Judy] is awarded 15% of the plaintiff's Air Force Retirement as her separate property." He argues that in this State military retired pay is not divisible as property in a divorce action. In the alternative, he argues that the marital master abused his discretion, because he awarded Judy fifteen percent of the retirement pay without making a finding, and without evidence, of the specific value of that pay.

The treatment of military retired pay in divorce actions has changed over the past ten years. In 1980, this court held that such pay is *not* divisible as property in a divorce action. *Baker v. Baker*, 120 N.H. 645, 648, 421 A.2d 998, 1000 (1980). The court cited four reasons for its decision. First, it was likely at that time that the federal pre-emption doctrine prevented States from classifying federal retirement benefits as divisible property. *Id.* Second, "[m]ilitary retirement pay lacks the following characteristics of property: cash surrender value, loan value, redemption value, lump sum value and value realizable after death." *Id.* Third, another common-law jurisdiction, Colorado, did not consider military retired pay property. *Id.* (citing *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976)). Fourth, the court felt that the possible premature death of the retiree made it difficult to equitably divide the retired pay. *Id.*

In 1981, the United States Supreme Court decided *McCarty v. McCarty*, 453 U.S. 210 (1981), holding that federal law precludes a State court from dividing military retired pay pursuant to State community property laws. The Court noted at the close of its opinion that Congress did have the power to provide more protection for the spouse of a military retiree, but cautioned that "[t]his decision . . . is for Congress alone." *Id.* at 235–36.

Congress responded to the *McCarty* decision by enacting in 1982 the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1982) (Protection Act). The Protection Act provides that State courts may

> "treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 either as

property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."

10 U.S.C. § 1408(c)(1). In other words, Congress gave back to the States the power to decide whether military retired pay is divisible as property in a divorce action. As the following excerpt demonstrates, the Protection Act takes into account the sacrifices endured by military spouses.

"A recurrent recruiting point that is made to a military couple from the time of the spouse's initial entry into the military is that the spouse is a partner in the member's career. The theme of the 'military family' and its importance to military life is widespread and well publicized. Military spouses are still expected to fulfill an important role in the social life and welfare of the military community. Child care and management of the family household are many times solely the spouse's responsibility. The military spouse lends a cohesiveness to the family facing the rigors of military life, including protracted and stressful separations. The committee finds that frequent change-of-station moves and the special pressures placed on the military spouse as a homemaker make it extremely difficult to pursue a career affording economic security, job skills and pension protection. Therefore, the committee believes that the unique status of the military spouse and that spouse's great contribution to our defense require that the status of the military spouse be acknowledged, supported and protected."

1982 U.S. CODE CONG. & ADMIN. NEWS 1601 (Senate Committee on Armed Services Report on Proposed Protection Act).

The vast majority of States took advantage of § 1408 and made military retired pay divisible as property in divorce actions. Several States enacted laws to this effect, and of the State appellate courts confronted with the issue, all but the Alabama Supreme Court held military retired pay divisible as property in most circumstances. *See* Guilford, *Uniformed Services Former Spouses' Protection Act Update*, THE ARMY LAWYER 43 (June 1989).

In Colorado, the State Supreme Court followed this trend and overruled *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506, the case relied upon by the *Baker* court. *In re Marriage of Gallo*, 752 P.2d 47, 54 (Colo. 1988). The *Gallo* court first noted that, due to the enactment of

the Protection Act, federal pre-emption of this area of law was no longer a concern. Second, the court addressed the argument, also made in *Baker*, that certain contingencies, such as the premature death of the retiree, may operate to divest the divorce parties of the pension benefits, and thus render the property division inequitable. "[T]his court has joined other courts in stating that contingencies should be taken into account when the court disposes of marital property between the parties, not when determining which assets belong in the marital estate." *Id.* at 52. Last, the court compared military retired pay to non-military retirement benefits.

"Further, military retirement pay, earned because of years of service, is comparable to the pension benefits an employee receives under a private plan, particularly insofar as all condition precedents have been satisfied, the officer has retired, and has begun receiving money. Although Congress could end the system tomorrow, '[n]o sound reason justifies treating [military retirement pay] differently from any other type of property whose value could become worthless in the future, *e.g.*, the corpus of a trust may dry up or a private pension plan could become bankrupt.'"

*Id.* at 53 (quoting *Kruger v. Kruger*, 73 N.J. 464, 470, 375 A.2d 659, 662 (1977)).

 The most important development for purposes of deciding this case is the enactment of RSA 458:16-a (Supp. 1989). Effective January 1, 1988, this statute defines property subject to equitable division in a New Hampshire divorce action. Prior to the enactment of RSA 458:16-a, I (Supp. 1989), reproduced below, such property was not defined by New Hampshire statutes.

"Property shall include all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties. *Intangible property includes, but is not limited to, employment benefits, vested and non-vested pension or other retirement benefits, or savings plans.*"

*Id.* (Emphasis added.) This language is unambiguous, and plainly includes military retired pay as "employment benefits, vested and non-vested pension or other retirement benefits." Phillip urges us to examine the legislative history of RSA 458:16-a (Supp. 1989) to arrive at a different interpretation of the statute, but the rules of statutory interpretation do not permit us to do so. "We will examine the

legislative intent and the legislation's objectives only when construing an ambiguous statute." *Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 542, 484 A.2d 1101, 1102 (1984). We cannot redraft a statute "to make it conform to an intention not fairly expressed" in its language. *In re Russell C.*, 120 N.H. 260, 268, 414 A.2d 934, 938 (1980). "[W]e will therefore give the unambiguous language of the statute its plain meaning unless and until the legislature sees fit to change it." *Ellis v. Royal Ins. Co.*, 129 N.H. 326, 334, 530 A.2d 303, 308 (1987). Given the recent changes in State and federal law, and the plain language of RSA 458:16-a (Supp. 1989), we hold that military retired pay is divisible as property in New Hampshire divorce actions.

 Phillip alternatively argues that the master abused his discretion in awarding Judy fifteen percent of the retired pay without first placing a specific value on it. Phillip cites *Hodgins v. Hodgins*, 126 N.H. 711, 715–16, 497 A.2d 1187, 1190 (1985) in support of this argument. In that case we stated, "If it is possible for the [lower] court to ascertain the actual and contingent values for Mr. Hodgins's pension, it should do so." *Id.* at 715, 497 A.2d at 1190. This quoted language, however, is followed by a qualification.

> "In many cases . . . the nature of a pension will make it impossible to compute the foregoing amounts in any meaningful way. . . . In such cases, where it is nevertheless clear that the pension in question has some significant value, the problem of valuation may be avoided, and the risks of uncertainty evenly placed upon the parties, by a decree providing 'that upon maturity of the pension rights the recipient pay a portion of each payment received to his or her former spouse.'"

*Id.* at 715–16, 497 A.2d at 1190 (citation omitted).

The master in this case adopted this approach by ordering Phillip to "pay a portion of each payment received" to Judy, and we cannot say as a matter of law that in doing so he abused his discretion. "[T]rial courts have broad discretion in matters involving alimony and property distribution, and we will uphold their decisions unless there was an abuse of that discretion." *Marsh v. Marsh*, 123 N.H. 448, 451, 462 A.2d 126, 128 (1983). The master apparently found it "impossible to compute the [specific value of the retired pay] in any meaningful way," and therefore properly awarded Judy a percentage of that pay.

*Affirmed.*

HORTON, J., did not sit; the others concurred.