Merrimack
No. 2001-443

In the Matter of Dorothy H. White and Keener S. White, Jr.

Argued: September 19, 2002
Opinion Issued: November 20, 2002

*Jacques & Jacques, P.C.*, of Concord (*Doris S. Jacques* on the brief and orally), for the petitioner.

*Bianco Professional Association*, of Concord (*Denise A. Daniel* on the brief, and *Jeffrey A. Meyers* orally), for the respondent.

Duggan, J. The respondent, Keener S. White, Jr., appeals an order, recommended by a Master (*Michael H. Garner*, Esq.) and approved by the Superior Court (*Fitzgerald*, J.), approving the qualified domestic relations order (QDRO) submitted by the petitioner, Dorothy H. White. We affirm.

After a twenty-four-year marriage, the parties were divorced by final decree in July 1989. The divorce decree mandated that "[c]ounsel for the parties shall submit a Qualified Domestic Relations Order providing [the petitioner] with an interest in [the respondent's] pensions consistent with [the *Hodgins v. Hodgins*] formula" and awarded the petitioner alimony. *See Hodgins v. Hodgins*, 126 N.H. 711 (1985). Neither party appealed from the divorce decree. For eleven years, the parties could not agree on a QDRO. While the respondent initially made alimony payments, he failed to make some payments in 1997, 1999 and 2000. In July 2000, the petitioner filed a motion for contempt and to enforce the divorce decree.

The superior court conducted three hearings and reviewed submissions detailing the respondent's current gross income, post-divorce cost of living increases and other income increases over the past eleven years. The court found that the respondent received pay raises and promotions as a Delta Airline pilot during the long-term marriage and after the divorce. However, at least four times during the eleven-year period the respondent's income decreased from the previous year. The trial court

found that the respondent's promotions after the divorce "depended substantially upon the career he pursued during the marriage, and that both parties should, in accordance with the application of the *Hodgins* formula, share in the benefits as well as the risks of the respondent's subsequent career." The court also ordered a wage assignment of alimony payments based upon the finding that both parties would benefit from the dependability of an assignment.

As a Delta pilot, the respondent is eligible for payments from the Delta Pilots Retirement Plan (retirement plan). The retirement plan maximizes the monthly benefits by qualifying for tax advantages under Internal Revenue Code sections 401 and 415. 26 U.S.C.A. §§ 401, 415 (2002). The retirement plan uses a formula to calculate pension benefits based upon the employee's highest three years of compensation. The respondent's highest three years of compensation occurred post-divorce. In order for the retirement plan to remain "qualified" to receive tax benefits, the retirement plan can only consider annual compensation up to $200,000. 26 U.S.C.A. § 401(a)(17)(2002). To avoid this limitation, Delta created other plans that make up the difference between the total benefit calculated under the retirement plan's formula and the amount that can be paid from the retirement plan pursuant to section 401(a)(17).

These other plans are the Delta Pilots Bridge Plan, the Supplemental Annuity Plan, and the Money Purchase Pension Plan. The Supplemental Annuity Plan is the only plan that did not exist at the time of the parties' divorce. These three plans do not provide additional benefits above those calculated by the retirement plan's formula, but merely make up the difference between the total benefit and the amount that can be paid from the retirement plan due to section 401(a)(17). The benefits provided under the other plans are based upon the compensation in excess of the $200,000 cap.

On appeal, the respondent raises four issues. First, the respondent argues that a strict application of the *Hodgins* formula was inappropriate because of the nature of his post-divorce salary increases. Second, he argues that the trial court erred in finding that his promotions were foreseeable. Third, he argues that the trial court erred in ordering a wage assignment. A fourth issue, regarding the single survivorship benefit, was withdrawn at oral argument.

We afford the trial court broad discretion in determining and ordering an equitable distribution of the parties' marital property. *Rothbart v. Rothbart*, 141 N.H. 71, 74 (1996). "Absent an unsustainable exercise of discretion, we will not overturn the trial court's decision on property distribution." *In the Matter of Valence and Valence*, 147 N.H. 663, 666

(2002); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The primary issue is whether the apportionment formula for pension benefits established under *Hodgins v. Hodgins*, 126 N.H. 711 (1985) (superseded on other grounds by RSA 458:16-a, I (1992)), was appropriately applied to the respondent's pension in light of our holding in *Rothbart v. Rothbart*, 141 N.H. 71 (1996). In *Hodgins*, we created a formula applicable when the nature of the pension is such that it is impossible to ascertain its actual and contingent value. *Hodgins*, 126 N.H. at 715-17. We stated:

> Assuming that an equal distribution were to be called for, the decree would direct [the employee], upon commencement of his pension benefits, thereafter to pay [the former spouse] one-half of a percentage of each benefit payable to him, less taxes. The percentage would be derived by dividing the number of months [the employee] was employed, during the marriage and prior to commencement of the divorce proceedings, by the total number of months of credits he will have earned toward his pension as of the date benefits commence.

*See id.* at 716. By this calculation, the *Hodgins* formula limits distribution of pension benefits only to those attributable to employment during the marriage. *See id.*; *see also Hillebrand v. Hillebrand*, 130 N.H. 520, 525 (1988).

In *Rothbart*, we upheld the application of the *Hodgins* formula to a Delta pilot's defined benefit pension plan. We stated that "in a defined benefit pension[,] . . . the [benefit plan] is based on years of service and increases in salary. The total number of the [respondent's] years of service determine what percentage of his highest three-year average salary he will receive as an annual retirement benefit. Assuming he works for thirty years, he will receive sixty percent of his highest three-year average. But, if he retires after only twenty years of service, the percentage will be smaller. Similarly, assuming the [respondent] receives regular pay increases during his employment, his highest three-year average salary will necessarily be higher after thirty years of service than after fewer years of service." *Rothbart*, 141 N.H. at 75.

There is no relevant distinction between the respondent's pension and the *Rothbart* pension. The fact that the Supplemental Annuity Plan did not exist at the time of the divorce is of no consequence because this plan provides no benefit beyond what the Delta Pilot Retirement Plan would otherwise provide. The pensions in both *Rothbart* and the present case are

Delta Pilot Retirement Plans, and both are defined benefit plans. The benefits of both plans are dependent upon the employee's highest three years of compensation, and in both cases the highest three years of compensation occurred long after the divorce. In both cases, the parties stipulated to the *Hodgins* formula at the time of divorce.

We disagree with the respondent that *Rothbart* limits the *Hodgins* formula to cost of living increases. While we noted in *Rothbart* that "many salary increases merely reflect increases in the cost of living," we did not suggest that the *Hodgins* formula is not applicable to increases due to promotions long after the divorce. *Rothbart*, 141 N.H. at 76. "The *Hodgins* formula, by definition, applies the percentage to the actual benefits received by the employee upon retirement. Applied to a defined benefit pension, as in this case, the formula has the effect of distributing to the employee's former spouse benefits technically attributable to pay raises occurring after the divorce." *Id.* at 75-76.

■ The *Hodgins* formula thus applies even though it distributes benefits attributable to post-divorce pay increases. At the time of divorce, when the respondent stipulated to the *Hodgins* formula, he already had accrued twenty years of seniority at Delta Airlines. Absent those years of seniority accrued during the marriage, the respondent would not have enjoyed the same opportunities for promotion and the increased pension. As in *Rothbart*, it would be inequitable to award the post-divorce increases to the respondent alone when the total benefits were based upon seniority accrued during the marriage. *Rothbart*, 141 N.H. at 76.

"[The *Hodgins* formula's] purpose is to insure that 'the risks of uncertainty [are] evenly placed upon the parties.'" *Rothbart*, 141 N.H. at 76 (citations omitted). Indeed, in the present case, the respondent's salary decreased shortly after divorce. The trial court's order applying the *Hodgins* formula is appropriate because the formula accounts for this risk of uncertainty and places it evenly upon the parties. *See Hodgins*, 126 N.H. at 716.

"The court's goal in applying the *Hodgins* formula is equitable, though not necessarily equal, property distribution. *Hodgins*, when applied by the court, is a default formula. It is a default absent the possibility of determining the actual and contingent values of a pension, and absent a settlement agreement by the parties .... Only under unusual circumstances should the court deviate from the *Hodgins* [formula]." *Rothbart*, 141 N.H. at 76 (citations omitted). We agree with the trial court that there was nothing unusual in the respondent's circumstance and hold that the trial court's order was a proper exercise of discretion.

The respondent's second argument is that the trial court used an incorrect standard in determining whether the *Hodgins* formula should apply. The respondent argues that the trial court applied the *Hodgins* formula because his promotions were foreseeable but failed to consider that in *Rothbart* we stated, "[I]f a court finds that application of the *Hodgins* formula would result in a grossly inequitable distribution of marital assets, the court, in its discretion, may adjust the marital share or indulge in projections." *Rothbart*, 141 N.H. at 76-77.

In *Rothbart*, we also stated, "only under unusual circumstances should the court deviate from the *Hodgins* rule." *Id.* at 76. Our review of the trial court's order reveals that the court considered not only the foreseeability of the respondent's promotions, but also the parties' limited equity and their substantial debt at the time of divorce. The court expressly found that applying the *Hodgins* formula would not result in a grossly inequitable distribution of the marital assets. We hold that its decision was a sustainable exercise of discretion.

The final issue is whether the trial court erred in ordering a wage assignment of alimony payments. While the respondent initially made alimony payments, he failed to make some payments in 1997, 1999 and 2000. At the first hearing, the trial court added a wage assignment provision to the divorce decree, as required by RSA 458-B:2, IV(b) (2001). Soon thereafter, the respondent failed to make his February 2001 alimony payment until he made his March payment. In light of the respondent's earlier failure to make certain alimony payments, the trial court's finding that both parties would benefit from the dependability of a wage assignment does not amount to an unsustainable exercise of discretion. *Cf. Holliday v. Holliday*, 139 N.H. 213, 218 (1994); *see also Lambert*, 147 N.H. at 296 (explaining unsustainable exercise of discretion standard). We conclude that there was no error.

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred; GALWAY, J., superior court justice, specially assigned under RSA 490:3, concurred.