NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

10th Circuit Court-Brentwood Family Division
No. 2015-0672

IN THE MATTER OF JEFFREY OLIGNY AND PAULA OLIGNY

Submitted: September 21, 2016
Opinion Issued: December 23, 2016

Primmer Piper Eggleston & Cramer PC, of Manchester (Doreen F. Connor and Matthew J. Delude on the brief), for the petitioner.

Fitzgerald-Boyd Law, PLLC, of Plaistow (Jacqueline C. Fitzgerald-Boyd on the brief), for the respondent.

HICKS, J. The petitioner, Jeffrey Oligny, appeals an order recommended by a Hearing Officer (Sheri E. Colligan, Esq.) and approved by the Circuit Court (Weaver, J.) enforcing the college contribution provision contained in the parties' 2003 divorce decree, based upon a finding that the petitioner's offer to co-sign loans with his children did not meet his obligation under the decree to equally contribute to their college expenses. We affirm.

The relevant facts follow. The parties were married in 1993. They divorced in 2003, when their son and daughter were minors. Included in the decree were several provisions that required the parents to share expenses equally on behalf of their children. For example, the decree required the parents to: "equally divide any camp, daycare and extracurricular activity fees";

"equally be responsible for the [guardian ad litem] fees"; and "each be responsible for 50% of any and all uninsured medical, dental . . . and other health care expenses." The decree also required the parties to "equally contribute to any private and post[-]secondary educational expenses of their children, after the child has exhausted all forms of scholarships, loans, grants, etc."

Before entering college, the children applied for scholarships through their high schools and for financial aid through their colleges' financial aid process. Both children accepted the loans and grants for which they qualified.

At the time of the trial court's order, the respondent, Paula Oligny, had taken out $28,075.52 in parent loans for the daughter's freshman year and first half of her sophomore year, and $8,450.00 for the first half of the son's freshman year of college. Meanwhile, the petitioner had made no financial contributions to the children's college tuition.

In lieu of making payments, or taking out a loan on his own, the petitioner offered to co-sign loans for his children for the balance due for their college educations, apparently concluding that such offers fulfilled his obligation under the college contribution provision of the divorce decree. In response, the respondent moved that the trial court find the petitioner in contempt for refusing to pay his share of the college expenses pursuant to the provision.

In August 2015, a child support hearing was held to address, among other things, the college contribution provision. At the hearing, the petitioner asserted that, under his interpretation of the provision, the children were required to first seek subsidized or unsubsidized federal loans on their own, and then seek co-signed loans with a parent. Only after the children exhausted the first two sources of loans, did the petitioner believe that the parents were required to either contribute "direct[ly] through cash" or through some "other type[ ] of borrowing."

After the hearing, the hearing officer issued a recommended order that was approved by the trial court. In the order, the court found the college contribution provision to be "valid and enforceable." See In the Matter of Donovan & Donovan, 152 N.H. 55, 63-64 (2005) (holding that support orders issued prior to February 2, 2004, may require parents to contribute to their children's college education). The trial court determined that the children had "availed themselves of the available scholarships, grants and loans" and had "taken out loans and grants consistent with what they qualified for under federal financial aid guidelines." Consequently, the court concluded that "the balance due is the responsibility of the parents."

2

The court rejected the petitioner's argument that his offer to co-sign loans satisfied his obligation under the decree. The court stated that "[t]o accept this argument would have the effect of abrogating his responsibility under the [college contribution provision] and lead to an unjust result." Accordingly, the court determined that the petitioner is responsible for 50% of the amount of loans, costs, interest, and fees that the respondent has incurred. The petitioner filed a motion to reconsider, which the court denied. This appeal followed.

On appeal, the sole issue for our review is whether the trial court correctly interpreted the college contribution provision in the parties' divorce decree. As a threshold matter, the parties dispute the applicable standard of review. According to the petitioner, we should review this matter de novo. By contrast, the respondent claims that we should review this matter under our unsustainable exercise of discretion standard. We agree with the petitioner. The issue before us is a matter of the interpretation of a divorce decree. "The interpretation of the language of a divorce decree, like the interpretation of other written documents, is a question of law, reviewed by this court de novo." Estate of Frederick v. Frederick, 141 N.H. 530, 531 (1996).

In ascertaining the meaning of a divorce decree, we look to the plain meaning of the language viewed in the context of the entire decree. Bonneville v. Bonneville, 142 N.H. 435, 438 (1997). "Subsidiary clauses are construed so as not to conflict with the primary purpose of the decree." Id.

The college contribution provision provides that "the parties shall equally contribute to any private and post[-]secondary educational expenses of their children, after the child has exhausted all forms of scholarships, loans, grants, etc." By its plain language, the college contribution provision requires that the children first "exhaust[ ] all forms of . . . loans," and that the parents thereafter "equally contribute" to the remaining educational expenses. This is a condition precedent to the parents' contribution. Therefore, the parental obligation is only triggered once the child's obligation is met.

The petitioner argues that the plain meaning of the phrase "all forms of . . . loans" includes co-signed loans, and that, consequently, the children are required to apply for co-signed loans before his direct contribution obligation arises. Although we agree with the petitioner that a co-signed loan is a form of loan, we disagree with his contention that it is a form of loan that the child can exhaust. The parents and children have different responsibilities under the college contribution provision, independent of each other. The provision plainly requires that the child "exhaust[ ] all forms of . . . loans." It does not require, as the petitioner suggests, that the child and the parent exhaust additional options available to them. Co-signed loans cannot be acquired by a child alone; they require the involvement of another. To the extent that the petitioner argues that our interpretation of the college contribution provision is

3

limited by the arguments that the respondent raised in the trial court, he is mistaken.

The petitioner next argues that the phrase "all forms of . . . loans" should be interpreted as applying to a broader range of loans because the provision includes the abbreviation "etc."  We agree with the petitioner that the use of the abbreviation "etc." signals that the college contribution provision's enumerated list of financial resources is not exclusive.  Nonetheless, viewing the provision as a whole, we disagree with the petitioner that co-signed loans fall within the provision's parameters.

The college contribution provision is one of several provisions in the decree requiring the parents to share equally in their children's expenses.  For example, the decree also requires the parties to "equally divide any camp, daycare and extracurricular activity fees," "equally be responsible for [guardian ad litem] fees," and "be responsible for 50% of any and all uninsured medical, dental, . . . and other health care expenses."  Viewed in the context of the decree as a whole, we conclude that the purpose of the college contribution provision was to ensure that both parents share equally in their children's college expenses, not to shift the burden of additional debt onto the child.  Therefore, we agree with the trial court that co-signing is "inconsistent with the language of the provision" because it "put[s] the full burden of payment on the children while alleviating [the parents'] responsibility to contribute."

The petitioner also asserts that the college contribution provision does not require the parents to cover all remaining expenses after the children's obligations are fulfilled.  We disagree.  The college contribution provision states that "the parties shall equally contribute to any . . . expenses."  The word "shall" specifies that the parties' equal contribution to the children's college expenses is mandatory.  See McCarthy v. Wheeler, 152 N.H. 643, 645 (2005) ("The use of the word 'shall' is generally regarded as a command; although not controlling, it is significant as indicating the intent that the statute is mandatory.").  The use of the term "any" suggests that the parents must equally contribute to all remaining expenses.

The petitioner also argues that the trial court improperly relied upon a "policy rationale" that the legislature rejected in 2004 when it repealed the authority of trial courts to require divorcing parents to contribute to their children's college expenses.  See In the Matter of Donovan & Donovan, 152 N.H. at 61.  We need not address the merits of this argument because we have reviewed the trial court's interpretation de novo.  See Estate of Frederick, 141 N.H. at 531.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

4