**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0369, <u>In the Matter of Susan Drew and James Drew</u>, the court on August 3, 2017, issued the following order:**

Having considered the briefs of the parties and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in this case. The husband, James Drew, appeals, and the wife, Susan Drew, cross-appeals, a decision of the Circuit Court (<u>Foley</u>, J.) concerning the division of the husband's retirement assets, which consist of five defined contribution retirement accounts and two traditional pensions. The husband challenges the trial court's division of his traditional pensions, and the wife challenges its division of his defined contribution retirement accounts. The husband asserts that the trial court's division of his traditional pensions is erroneous because the trial court accepted apportionment orders drafted by an actuary, instead of those drafted by the husband. The wife contends that the trial court erred when, in December 2013, it changed the date upon which the husband's defined contribution retirement accounts would be valued from "the date of division" to the date on which the divorce proceeding was filed. She further contends that the court erred in the order now on appeal by declining to "correct" its December 2013 orders. We affirm.

I. The Husband's Appeal

    A. Relevant Facts

The parties divorced in April 2013, after having been married for approximately 16 years. The parties' divorce decree provided that the husband's traditional pensions, which comprise a military pension from the United States Army and a civil service pension from the Internal Revenue Service, would be divided pursuant to the <u>Hodgins</u> formula. <u>See</u> <u>Hodgins v. Hodgins</u>, 126 N.H. 711, 716 (1985), <u>superseded on other grounds by</u> RSA 458:16-a, II (2004). The <u>Hodgins</u> formula is a default formula that applies when the nature of a retirement benefit makes it impossible to ascertain, at the time of divorce, the benefit's actual and contingent values. <u>See</u> <u>id</u>. at 715; <u>see also</u> <u>In the Matter of Taber-McCarthy & McCarthy</u>, 160 N.H. 112, 117 (2010); <u>Rothbart v. Rothbart</u>, 141 N.H. 71, 76 (1996).

"[T]he <u>Hodgins</u> formula limits distribution of pension benefits only to those attributable to employment during the marriage." <u>In the Matter of White & White</u>, 148 N.H. 531, 533 (2002). The <u>Hodgins</u> formula is (1) the number of

months employed while married and before the divorce proceedings commenced divided by the total number of months of credits the employee will have earned toward his pension as of the date benefits commence (2) multiplied by the actual, monthly pension benefit that the employee receives upon retirement (3) multiplied by the former spouse's share of the marital assets. See Rothbart, 141 N.H. at 77; Hodgins, 126 N.H. at 716.

In the instant case, although the parties' divorce decree stated that an unequal division of the parties' assets was equitable, it failed to specify whether the husband's traditional pensions were to be divided unequally. In a December 5, 2013 order, the court clarified that the husband's traditional pensions were to be "divided 55%/45% in favor of [the wife] . . . , based upon the so-called Hodgins Formula." The order stated elsewhere: "The date of valuation is the date of filing the petition for divorce, not the date of divorce or any other more current date." The order also stated that "[i]f for any reason the Plan Administrator of any pension account does not accept" the order's explanation of the Hodgins formula "for purposes of dividing a retirement account, the parties shall submit a stipulated value of such asset as of the date of the filing of the Petition for Divorce."

In a December 27, 2013 order, the court reiterated that, as to the husband's military pension, the wife "is awarded 55%" of the husband's "disposable retired/retainer pay, based upon application of the Hodgins formula." The order stated that "[i]f this language does not satisfy" the federal authorities, "then the parties shall provide the Court with the necessary information so that the Court may calculate the value as of the date of filing the petition for divorce."

Subsequently, because the parties were unable to agree upon the terms and conditions of the orders necessary to divide the husband's traditional pensions, and, apparently, could not stipulate to the value of those pensions, the court appointed Attorney Steven Shadallah to draft the orders. Because of his "limited knowledge" about drafting such orders, Shadallah identified an actuary with "expertise in the distribution of government and military pensions." The trial court ordered the parties to enlist that actuary's assistance, and, in October 2015, he submitted draft orders for the court's review.

The draft order dividing the husband's military pension provides that the wife is entitled to a portion of his gross retired pay calculated as follows:

> (i) take the [husband's] gross retired pay; (ii) Reduce the amount in Step (i) by the full amount of any Survivor Benefit premium; (iii) Multiply the amount developed in Step (ii) by 55.0%; and (iv) Multiply the amount developed in Step (iii) by a fraction whose denominator is the number of "retirement benefit points" used to compute the [husband's] gross retired pay when he retires and

2

whose numerator is the number of "retirement benefit points" associated with the time period beginning on and including November 12, 1995 and ending on but not including November 28, 2011.

The draft order provides that the wife will receive "a proportionate share of any post-retirement benefit adjustment." It also states that the husband and the wife "have . . . agreed that the [wife] shall be named as a former spouse <u>irrevocable</u> beneficiary for the full amount of the available Survivor Benefits" and then, consistent with that agreement, designates the wife, irrevocably, as the husband's beneficiary under the "Reserve Component Survivor Benefit Plan with respect to the maximum survivor benefits." Additionally, the order precludes the husband from making "any future election which shall reduce the amount or the percentage of disposable retirement pay and/or survivor benefits" payable to the wife.

The draft order dividing the husband's civil service pension similarly provides that the husband and the wife "have . . . agreed that the [wife] shall be named as an irrevocable beneficiary for the maximum possible Former Spouse Survivor Annuity that the Former Spouse can be awarded based upon the Survivor Benefits that are associated with the noted annuity." Consistent with that agreement, the draft order provides that, if the husband dies before or during his retirement and the wife is still alive when he dies, then she is "awarded a Former Spouse Survivor Annuity," the amount of which "will be equal to the maximum possible Former Spouse Survivor Annuity that . . . can be awarded." <u>See</u> 5 C.F.R. 838.711 (2017) (defining the phrase "maximum former spouse survivor annuity").

The draft order also provides that, if the husband retires and the wife is alive when he does so, then she is entitled to "110% of a PRORATA share of [the husband's] gross monthly annuity under [the Federal Employee Retirement System] after such total gross annuity has been reduced by the cost for any associated survivor benefits" and that she "shall receive a proportionate share of any post-retirement benefit adjustment." <u>See</u> 5 C.F.R. § 838.922(a) (2017) (defining the term "prorata share").

In November 2015, the wife filed a motion asking the court to approve the actuary's draft orders. The husband filed a motion to "dismiss" them and to approve orders that he drafted. The husband's draft apportionment orders purported to calculate his monthly retirement benefits as of November 28, 2011, the date on which the divorce action was filed.

The trial court held a hearing on these and other motions in March 2016 at which the actuary and the husband testified. Thereafter, the trial court held a telephone hearing at which the court questioned the actuary about his draft orders. Based upon the actuary's testimony and offer of proof, which the trial

court found "to be convincing," the court approved the actuary's draft orders and ordered the parties to execute them.

### B. The Husband's Appellate Arguments

On appeal, the husband challenges the trial court's decision to approve the apportionment orders drafted by the actuary, instead of the orders that the husband drafted. He contends that the court erred by approving the actuary's draft orders because: (1) the orders are inconsistent with the parties' divorce decree because they apply the Hodgins formula to the husband's actual, monthly retirement benefits when he retires, instead of to a hypothetical benefit calculated as of the date on which the divorce was filed; (2) applying the Hodgins formula to his actual, monthly retirement benefits allows the wife to benefit from cost-of-living adjustments (COLAs) and other salary increases that occurred after the divorce action was filed, which he argues is unfair; (3) allowing the wife to benefit from COLAs and other salary increases that occurred after the divorce action was filed is not required by the pertinent federal regulations; and (4) the orders do not include the requisite language limiting the wife's receipt of survivor benefits to those to which she is entitled under the Hodgins formula. We address each argument in turn.

We afford trial courts broad discretion in determining matters of property distribution when fashioning a final divorce decree. In the Matter of Crowe & Crowe, 148 N.H. 218, 221 (2002). We will not overturn the trial court's decision absent an unsustainable exercise of discretion. Id. "If the court's findings can reasonably be made on the evidence presented, they will stand." In the Matter of Letendre & Letendre, 149 N.H. 31, 36 (2002).

### 1. Divorce Decree

We first address the husband's contention that, by applying the Hodgins formula to his actual, monthly retirement benefits when he retires, instead of to a hypothetical benefit calculated as of the date on which the divorce was filed, the actuary's draft orders conflict with the parties' divorce decree. The interpretation of the language of a divorce decree, like the interpretation of other written documents, is a question of law, reviewed by this court de novo. In the Matter of Oligny & Oligny, 169 N.H. 533, 535 (2016). In ascertaining the meaning of a divorce decree, we look to the plain meaning of the language viewed in the context of the entire decree. Id. at 536.

The Hodgins formula, by definition, applies to the actual benefits received by the employee upon retirement. Rothbart, 141 N.H. at 75. In effect, the husband argues that the parties' divorce decree required the trial court to deviate from that formula. However, the parties' divorce decree states only that the wife is "entitled to her share" of the husband's military pension "pursuant to the Hodgins Formula," and that the husband's civil service pension "shall be

4

divided" pursuant to that formula. Nothing in the decree's plain language indicates the trial court's intent to deviate from <u>Hodgins</u>. <u>See id</u>. at 77 (explaining that, when a trial court chooses to deviate from the <u>Hodgins</u> formula, it must state its reasons for doing so and make specific findings and rulings supporting its decision).

In arguing that the trial court intended to deviate from <u>Hodgins</u>, the husband relies upon its orders of December 5 and December 27, 2013. In those orders, the court reiterated its intent to apply <u>Hodgins</u> to the husband's traditional pensions, and did not state any reasons for deviating from the <u>Hodgins</u> rule or make specific findings and rulings to support doing so. <u>See id</u>. Under those circumstances, we do not construe the trial court's December 5 and December 27, 2013 orders as demonstrating its intent to deviate from the <u>Hodgins</u> formula.

### 2. Fairness

We next address the husband's argument that it is unfair to apply <u>Hodgins</u> to his actual, monthly retirement benefits because doing so allows the wife to benefit from COLAs and other salary increases that occurred after the divorce action was filed. Such is the nature of the <u>Hodgins</u> formula, however. <u>See id</u>. at 75-76. Because the formula applies to the actual benefits that an employee receives upon retirement, when it is applied to retirement benefits, which are based upon years of service and salary increases, it has the effect of distributing to the employee's former spouse benefits technically attributable to pay raises and years of service occurring post-divorce. <u>See id</u>.

### 3. Federal Regulations

We next address the husband's assertion that, to the extent that the trial court determined that the applicable federal regulations require including COLAs in the wife's share of his traditional pensions, the trial court erred. We disagree with the husband's interpretation of the trial court's order. The trial court did not rule that including COLAs in the wife's share of the husband's traditional pensions was required by federal regulations. Rather, the court explained that including COLAs is the "default" under the federal regulations, as under <u>Hodgins</u>, because, under both, "the amount to be divided . . . is the amount the employee receives at the time of retirement."

The federal regulations upon which the husband relies do not demonstrate that the trial court's explanation is erroneous. The husband contends that the governing regulations are 5 C.F.R. § 838.622(b)(2), (c)(1)(ii), and (c)(2)(iii) (2017) and 5 C.F.R. § 838.923 (2017). We address each regulation in turn.

5

5 C.F.R. § 838.622(b)(2) applies to court orders that award "a former spouse a specific dollar amount from the employee annuity." However, the orders at issue do not award the wife "a specific dollar amount." 5 C.F.R. § 838.622(b)(2). The draft orders award the wife a portion of the husband's traditional pensions based upon a formula. Accordingly, the applicable regulation is 5 C.F.R. § 838.622(b)(1) (2017), which provides that COLAs and salary adjustments are included in the former spouse's share "[u]nless the court order directly and unequivocally orders otherwise." The plain language of this regulation is consistent with the trial court's determination that the "default" under the pertinent regulations, as under Hodgins, is to apportion to the former spouse a portion of the monthly retirement benefit that the employee actually receives upon retirement.

The plain language of 5 C.F.R. § 838.923 is also consistent with that determination. 5 C.F.R. § 838.923 applies to awards of survivor annuities. It provides that a court order that awards a former spouse a survivor annuity "is deemed to order [the Office of Personnel Management] to add to the survivor annuity rate [COLAs] that occur before the death of a retiree . . . unless the court order contains an instruction expressly directing OPM not to add these adjustments to the survivor annuity rate." 5 C.F.R. § 838.923.

The husband's reliance upon 5 C.F.R. § 838.622(c) is misplaced. That regulation pertains to court orders that contain only "a general instruction to calculate the former spouse's share effective at the time of divorce or separation." 5 C.F.R. § 838.622(c)(1)(i). The actuary's draft orders do not contain such an instruction.

### 4. Language of the Actuary's Draft Orders

We next address the husband's assertion that the actuary's orders do not include the requisite language limiting the wife's receipt of survivor benefits to those to which she is entitled under the Hodgins formula. He argues that, in order to limit the wife's receipt of survivor benefits to those to which she is entitled under the Hodgins formula, the draft orders should state that she is entitled to a "prorata share" of those benefits, instead of that she is entitled to the "maximum possible" or "full amount" of those benefits.

At the telephone hearing, the actuary stated that, with respect to the wife's share of the husband's military pension, "there was a specific decision on the contested matter, . . . made by the Department of Defense, that she should get maximum benefits." The actuary explained that, because of that decision with regard to the husband's military pension, the actuary "put in [the draft order] that [the wife] should get maximum . . . survivor benefits on the IRS side." Based upon the actuary's answers to the court's questions, the court determined that it was satisfied that the actuary's draft orders limited the wife's receipt of survivor benefits to those to which she is entitled under the Hodgins formula.

6

To the extent that the husband argues that in so doing, the trial court erred, it was incumbent upon him to provide a record sufficient to decide this issue on appeal, such as the decision to which the actuary referred. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). Having failed to do so, and because we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence, In the Matter of Aube & Aube, 158 N.H. 459, 465 (2009), we uphold the trial court's determination.

We have reviewed the husband's remaining arguments and conclude that they are insufficiently developed for our review, see Lennartz v. Oak Point Assocs., 167 N.H. 459, 464 (2015), or that they do not otherwise warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

II. The Wife's Cross-Appeal

A. Relevant Facts

In the parties' divorce decree, the trial court ordered that the husband's defined contribution retirement accounts "shall be divided by a . . . Qualified Domestic Relations Order (QDRO) as necessary such that[,] based on the values on the date of division[,] [the wife] is awarded 55% and [the husband] 45% of the balances in each account." (Emphasis added.) The court's subsequent December 5, 2013 order, entered in response to post-divorce motions filed after the time for a mandatory appeal of the parties' divorce decree had expired, provided, in pertinent part, that all of the husband's retirement assets, including his defined contribution retirement accounts, "are divided 55%/45% in favor of [the wife] . . . , based upon the so-called Hodgins Formula" and that "[t]he date of valuation is the date of filing the petition for divorce, not the date of divorce or any other more current date." In its December 27, 2013 order, the court clarified that "the Hodgins formula does not apply" to the husband's defined contribution retirement accounts and that the wife "is entitled to 55% of the value of those assets as of the date of the filing of the Petition for Divorce, namely November 28, 2011." The court explained that "the date of filing" was "the most equitable date for valuation."

The wife filed a motion to reconsider, which the trial court denied on February 12, 2014, because "[t]here is no new information or basis to reconsider yet again."

The court appointed Shadallah to draft the QDROs dividing the husband's defined contribution retirement accounts. Shadallah submitted to the trial court the draft QDROs along with a report, which contained the following paragraph: "Contrary to [the wife's] belief, the Commissioner does not believe that he has been empowered to change the amount of the retirement assets awarded to either party, or the percentage allocation, or to provide in the

7

distribution documents for gains, losses or interest when that seems to have been resolved by the Court." In a November 21, 2014 order, the trial court accepted Shadallah's report, and ordered the parties to execute the proposed QDROs.

The wife then filed a motion for clarification, which articulated her position as follows: "The division of the retirement assets should be straightforward. By order of the Court, the [wife's] share is 55% of the balance at November 28, 2011 (the date the Petition for Divorce was filed), less 55% of the balance at November 12, 1995 (the date of Marriage), and, to the resultant amount add the Earnings attributable to such amount through to the date the distribution payment is actually made to the [wife]. These Earnings belong to the [wife] – they were earned on her property." (Emphasis added.)

The trial court denied the wife's motion for clarification on January 9, 2015. The wife filed an appeal on February 6, 2015, purporting to challenge the trial court's December 27, 2013, February 12, 2014, and January 9, 2015 orders. The wife listed three issues in her notice of appeal, each of which concerned whether the trial court erred when it "modified" the divorce decree by revising the operative date for her 55% share from the "date of division" to the "date of filing." (Bolding omitted.)

We dismissed her appeal on April 9, 2015, because it was not timely filed. We explained that the errors about which the wife complained occurred in the trial court's December 5 and December 27, 2013 orders. To challenge those orders in a timely appeal, the wife's appeal would have had to have been filed on or before January 27, 2014 (within 30 days of December 27, 2013). Because the wife did not file her appeal until February 6, 2015, we dismissed it.

Thereafter, the wife moved for reconsideration of the order dismissing her appeal, arguing that she was "not appealing [or] disputing the trial court's modification" of the original divorce decree by changing "the date of valuation from 'the date of division' to 'the date of filing the Petition for Divorce,'" but, rather, was "appealing the interpretation of the method of calculation being used to distribute the [husband's] retirement accounts." The wife contended that she sought "her rightful proportional share of any gains or losses accrued since the date of division, 11/28/2011." We denied her motion for reconsideration.

On June 29, 2015, after the mandate had been returned to the trial court, the trial court, again, ordered the wife to execute the QDROs dividing the husband's defined contribution retirement accounts. In response, the wife filed a motion for further hearing regarding the distribution of those accounts in which she asserted that the court's orders are unclear as to whether she "is entitled to the gains and losses on her share [of those accounts,] which accrued as of the date of the Court[-]ordered distribution." The trial court denied the wife's motion in a September 4, 2015 order. The wife moved for

reconsideration of that denial, and her motion for reconsideration was considered by the court at the previously-discussed March 2016 hearing.

At that hearing, the wife contended that the fact that the court originally ordered that the husband's defined contribution retirement accounts be valued as of the "date of distribution" demonstrated the court's intent to award her a share of the gains and losses in those accounts, accrued as of that date. The husband countered that the wife's argument was foreclosed by her prior appeal. The trial court ruled, from the bench, that, although the original divorce decree "set the valuation date[ ] as [the] date of division," and although this "suggests [the court's] intent . . . to include gains and losses," the court "clarified, reconsidered, and reversed [itself]" in its December 2013 orders. The court further ruled "that the Supreme Court's denial of the [wife's] appeal lends further support" to the trial court's determination that "gains and losses are out of the case."

The court subsequently reiterated its ruling in a narrative order, in which it gave three reasons for declining to change the valuation date from that set in its December 2013 orders: (1) when it modified the valuation date in those orders, the parties' divorce decree "became silent on gains and losses" and "that silence . . . is not an ambiguity, enabling a subsequent effort to include gains and losses as part of the QDRO preparation process"; (2) our dismissal of the wife's earlier appeal and our denial of her subsequent motion for reconsideration preclude the wife's claim for such gains and losses; and (3) our actions on the wife's earlier appeal became the so-called "law of the case," that the trial court was required to apply.

### B. The Wife's Appellate Arguments

In her cross-appeal, the wife contends that the trial court's December 2013 orders are ultra vires because, by changing the valuation date, the trial court modified the parties' property settlement without the requisite evidence of fraud, undue influence, deceit, misrepresentation, or mutual mistake. See In the Matter of Taber-McCarthy & McCarthy, 160 N.H. at 117. She does not argue that, in December 2013, the trial court lacked subject matter jurisdiction to change the valuation date; rather, she merely contends that the court acted unlawfully when it did so. However, whether the trial court's December 2013 orders are unlawful is not a proper issue in this appeal. As we explained when we dismissed the wife's prior appeal, the time for challenging those orders expired, at the latest, on January 27, 2014 (within 30 days of December 27, 2013).

The wife further contends that the trial court erred in the order now on appeal when it declined to "correct" its December 2013 orders. The December 2013 orders became appealable final decisions on the merits of the issue of when to value the husband's defined contribution retirement accounts, at the very

9

latest, as of January 27, 2014. The December 2013 orders resolved, finally and on the merits, the issue of the date of valuation of the husband's defined contribution retirement accounts, which is why we treated the wife's prior appeal as an appeal from a final decision on the merits, and not as an interlocutory appeal. See Germain v. Germain, 137 N.H. 82, 84 (1993). Because the December 2013 orders were not timely appealed and because they did finally resolve the issue of the valuation date for the husband's defined contribution retirement accounts, we cannot fault the trial court for declining to "undo" them, particularly given that the wife has neither argued nor demonstrated that they were the result of fraud, undue influence, deceit, misrepresentation, or mutual mistake. See In the Matter of Taber-McCarthy & McCarthy, 160 N.H. at 117.

Affirmed.

DALIANIS, C.J., and BASSETT, J., concurred; MANGONES, J., retired superior court justice, assigned pursuant to RSA 490:3, II, concurred.


**Eileen Fox,**
**Clerk**